**John Allen POLK, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 294–84.

Court of Criminal Appeals of Texas, En Banc.

May 22, 1985.

John Stauffer, Dallas, for appellant.

Henry Wade, Dist. Atty., and Ruth E. Plagenhoef, Bill Edie and Jim Nelson, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellant was convicted of attempted murder under V.T.C.A. Penal Code, § 19.-02(a)(2) by a jury; punishment was assessed at 30 years confinement in the Texas Department of Corrections. The Dallas Court of Appeals affirmed the conviction in an unpublished opinion dated January 12, 1984. We granted appellant's Petition for Discretionary Review to review the court of appeals' holding that the trial court did not err in entering an affirmative finding in the judgment that appellant used or exhibited a deadly weapon. 676 S.W.2d 408 (Tex.Cr.App.1984). Appellant asks this Court to reform the judgment to delete the finding since it affects the date he may be eligible for parole.

Article 42.12, § 15(b), V.A.C.C.P., provides in pertinent part:

"... [I]f the judgment contains an affirmative finding under Section 3f(a)(2) of this Article, [the prisoner] is not eligible for release on parole until his actual calendar time served, without consideration of good conduct time, equals one-third of the maximum sentence or 20 calendar years, whichever is less...."

Article 42.12, § 3f(a)(2) provides in pertinent part:

"... Upon affirmative finding that the defendant used or exhibited a deadly weapon during the commission of an offense ... the trial court shall enter the finding in the judgment of the court. Upon an affirmative finding that the deadly weapon that the defendant used or exhibited was a firearm, the court shall enter that finding in its judgment."

Thus, an improper affirmative finding may prevent appellant from becoming eligible for release on parole as soon as he would have been had no finding been made.

The indictment, charge, verdict and judgment in this case are relevant to our examination of appellant's request. The indictment alleged in pertinent part that the defendant did:

"... with the specific intent to commit the offense of murder, attempt to cause the death of Toni Patrick, an individual, hereinafter called complainant, by knowingly and intentionally stabbing and cutting said complainant with a knife...."

The application portion of the charge tracked the language of the indictment. The verdict of the jury stated: "We, the jury, find the defendant guilty of the offense of attempted murder as charged in the indictment." The trial judge entered the following finding in the judgment:

"THE COURT FINDS THAT THE DEFENDANT HEREIN USED OR EXHIBITED A DEADLY WEAPON DURING THE COMMISSION OF SAID OFFENSE."

In order to properly address appellant's request, we must first ascertain the meaning of the term "affirmative finding" as it appears within Art. 42.12, supra. This term has not been statutorily defined. We may, therefore, look to the common usage and legislative history of the term. Code Construction Act, Art. 5429b, V.A.C.S.; *Barbee v. State*, 432 S.W.2d 78 (Tex.Cr. App.1968).

■ "Affirmative" is defined as "... that which avers a fact to be true; that which establishes." Black's Law Dictionary 55 (5th ed. 1979). "Finding" is defined as: "[t]he result of the deliberations of a jury or a court. A decision upon a question of fact reached as the result of a judicial examination or investigation by a court [or] jury...." Black's Law Dictionary 569 (5th ed. 1979). We have searched the legislative history of Article 42.12, supra, and have determined that, given the previous definitions, these words taken together were intended to mean the trier of fact's *express* determination that a deadly weapon or firearm was actually used or exhibited during the commission of the offense.[1]

1. Article 42.12, § 3f(a)(2) was added by amendment in 1977. The original bill comprising this amendment was introduced in the Senate as Senate Bill 152. As is usual for most bills, the record of the legislative history of S.B. 152 is incomplete: the intended meaning of a specific term is difficult to educe. We examined the transcripts of several hearings by the Senate Sub-committee on Criminal Affairs and discovered a loose basis for the use of the term "affirmative finding."

On February 8, 1977, Jack Kyle, representing the Texas Department of Corrections (TDC), testified before the Senate Sub-committee on Criminal Affairs. He read an analysis prepared by the general counsel for the Department of Corrections which contained the following: "[o]n page 6 [of S.B. 152] we find that where a deadly weapon has been exhibited during a commission of an offense, the parole date is figured on flat time alone without consideration of good time. The problem [with S.B. 152] ... is how

will the [Texas] Department of Corrections determine whether or not a deadly weapon has been exhibited. It is suggested that enactment should include a suggestion that it be alleged in the indictments, and the indictment be sent to the department, or some other suitable method. Otherwise, we cannot compute the time." Thus, the Department was concerned that it would not be able to determine which prisoners would receive the special time computation provided for in the bill.

This problem was addressed by Senator Meier, the author of S.B. 152, on further hearings before the Senate Sub-committee on February 15, 1977, when he stated that the bill had "... an affirmative finding ... and an entry of that affirmative finding in the order of commitment so that the TDC [Texas Department of Corrections] would know." The bill, therefore, was written so that when the trier of fact found that a deadly weapon or firearm was used in the commission of the offense, that finding would

Given this definition and intent we may now examine how, when the jury is the trier of fact, an affirmative finding may properly be made. First, the trier of facts' verdict on the indictment may constitute an affirmative finding. In *Barecky v. State*, 639 S.W.2d 943 (Tex.Cr.App.1982), the defendant was charged with aggravated rape. The trial court entered upon the judgment a finding that "the said defendant committed the said offense with a deadly weapon, to-wit, a knife...." Id. at 944. Judge Tom Davis, writing for the court, stated:

"The jury found appellant 'guilty as charged in the indictment.' The indictment contains no mention of a deadly weapon. Neither does the *court's* charge to the jury. Thus, the court entered its finding as to use of a deadly weapon in the absence of such an 'affirmative finding' by the appropriate trier of fact. This was improper."

*Id.* at 945. Thus, if the indictment by allegation specifically places the issue before the trier of fact (i.e. ".... by stabbing him with a knife, a deadly weapon...."), then an affirmative finding is de facto made when the defendant is found guilty "as charged in the indictment." See also *Ruben v. State*, 645 S.W.2d 794 (Tex.Cr. App.1983).[2]

We pause to note that in some instances an affirmative finding will arise as a matter of law. If the trier of fact finds that a pistol has been used in the commission of the offense under the circumstances described above, then it has found that a deadly weapon has been used since a pistol is a deadly weapon per se. *Williams v. State*, 567 S.W.2d 507 (Tex.Cr.App.1978). *Giles v. State*, 617 S.W.2d 690 (Tex.Cr.App.

1981), and cases cited therein at 691. This analysis would extend to other instruments catagorized as per se deadly weapons, such as a firearm, *Stewart v. State*, 532 S.W.2d 349 (Tex.Cr.App.1976); a 30–30 calibre rifle, *Bravo v. State*, 627 S.W.2d 152 (Tex.Cr. App.1982); or a handgun, *Dade v. State*, 622 S.W.2d 580 (Tex.Cr.App.1981).

Finally, an affirmative finding may be made if the trier of fact responds to a special issue submitted during the punishment stage of trial.[3] Special issues are often submitted regarding enhancement allegations and probation eligibility. Of course, the trier of fact makes affirmative findings on the special issues submitted in the punishment stage of capital offense trials. See Art. 37.071, V.A.C.C.P. For the purposes of Art. 42.12, supra, an affirmative finding may be made if, during the punishment stage of trial, the trier of fact is presented with and responds in the affirmative to a special issue regarding the defendant's use or exhibition of a deadly weapon or firearm during the commission of the offense.

Now that we have examined what constitutes an affirmative finding and the manner in which it is made, we may address appellant's contention that the finding entered on the judgment in the case at bar was improper. Initially, we note one error made on the judgment in this case: the trial court improperly ascribed the affirmative finding of use of a deadly weapon to the court. Since the jury determined appellant's guilt and punishment, it was the proper fact finder to determine whether appellant used a deadly weapon. See *Thomas v. State*, 638 S.W.2d 905 (Tex.Cr. App.1982), and cases cited therein at 907.

---

be entered on the judgment, which would then be sent with the order of commitment. Thus, the Department of Corrections would know how to compute the defendant's time for parole purposes.

**2.** Not before us today is the question of how culpability under the theory of parties comes into play in this area. Where this is the State's theory, it may be that a special issue is required since Art. 42.12, § 3f(a)(2) calls for a finding that *the defendant himself* used or exhibited the

weapon in question during the commission of the offense.

**3.** While not mandating that the issue be submitted at the punishment phase of the trial, Art. 37.07, § 1(a) seems to indicate that this is the better practice. Expressing a clear departure from civil trial special issue verdict practice, Sec. 1(a) begins with the sentence: "The verdict in every criminal action must be general."

A properly worded finding should have indicated that the jury had made the finding.

■ Reformation of this error is unnecessary, however, since we agree with appellant that the entire finding should be deleted from the judgment. The trial court entered a finding that the defendant had used or exhibited a deadly weapon. The indictment did not mention use or exhibition of a deadly weapon, nor is a knife a deadly weapon per se. *Hawkins v. State*, 605 S.W.2d 586 (Tex.Cr.App.1980). Also, no special issue on use or exhibition of a deadly weapon was submitted to the jury during the punishment stage of trial. Based upon this record, we find that the jury did not make the affirmative finding entered on the judgment by the trial court.

The State contends that in the instant case the trial court did not err in entering the affirmative finding since by finding the appellant guilty of attempted murder, the jury necessarily found that the knife was used as a deadly weapon. The State cites *Hart v. State*, 581 S.W.2d 675 (Tex.Cr.App. 1979), and quotes from it: "... alleging that a knife was the weapon used in an attempt to cause death is an allegation that a knife is a deadly weapon." *Id.* at 678.

The State has misconstrued the language in *Hart*. In that case, the defendant was charged with attempted murder and was convicted of aggravated assault, a lesser included offense. The defendant complained on appeal that his conviction was based on a jury charge that permitted a conviction on a theory not supported by the indictment. The indictment alleged that the defendant had "knowingly and intentionally with the intent to commit the offense of murder, attempt to cause the death of (complainant) by stabbing (complainant) with a knife." *Id.* at 678. The defendant argued that such language did not include allegations of serious bodily injury or use of a deadly weapon as required for a conviction of aggravated assault under V.T.C.A. Penal Code, § 22.02.

We held that the indictment had set forth the allegation of serious bodily injury by the language "attempt to cause death."

We then added that alleging that the knife was the weapon used in an attempt to cause death is an allegation that the knife is a deadly weapon, citing V.T.C.A. Penal Code, § 1.07(a)(11). Thus, our holding in *Hart*, supra, concerns sufficiency of indictment allegations to support convictions for lesser included offenses. It does not, however, extend to entries by the trial court regarding affirmative findings by the trier of fact and should not be extended to imply that under all circumstances a knife is a deadly weapon.

The State also cites *Ex parte Moser*, 602 S.W.2d 530 (Tex.Cr.App.1980) and *Chavez v. State*, 657 S.W.2d 146 (Tex.Cr.App.1983) as support for the trial court's action. In *Moser*, the defendant was indicted for intentionally and knowingly causing the death of an individual by shooting him with a pistol. The jury found the defendant guilty as charged. The trial court included in the judgment the finding that the defendant had used a firearm during the commission of the offense and ordered the defendant confined from 60 to 120 days as a "shock probation" under Art. 42.12, § 3f, V.A.C.C.P., supra. We held that the jury's finding that the defendant had used a pistol amounted to an affirmative finding that he had used a firearm in the commission of the offense.

In *Chavez*, supra, the trial court entered an affirmative finding in the judgment that the defendant had used a deadly weapon. The indictment alleged that the defendant had committed murder "by committing an act clearly dangerous to human life, namely, shooting him with a gun." *Id.* at 147. The jury found the defendant guilty as charged in the indictment. The defendant contended on appeal that the indictment did not allege use of a deadly weapon, but only the use of a "gun"; hence, a jury verdict based on the indictment could not support a finding that a deadly weapon was used. Since a gun is not a deadly weapon per se, *id.* at 148, the issue was whether "shooting him with a gun" alleged use of a deadly weapon. Based upon the facts of the case and our holding in *Hart*, supra, we held

that the jury's finding on the indictment necessarily implied use of a deadly weapon. *Id.* at 148.

■ Overlooked by the reasoning employed in these cases is that an "implied" finding or an "amounts to" finding is not an *express* finding that a deadly weapon was used or exhibited by the defendant. Interpreting Art. 42.12. § 3f(a)(2), supra, in this manner, as we previously have, resurrects for appellant courts the very problem faced by the Texas Department of Corrections, see n. 1, that is: How is the finding to be determined? We believe the Legislature, by adding the words "affirmative finding" in response to Mr. Kyle's quandry, meant to save all of us from sinking ever deeper into the quagmire of whether differing indictment/verdict/fact situations amounted to "implied" findings or not. Therefore we now expressly disapprove any language in *Moser*, supra, or *Chavez*, supra, that would perpetuate this practice. Where the jury is the trier of fact, the trial court may not properly enter that they have made an affirmative finding concerning the defendant's use or exhibition of a deadly weapon or firearm during the commission of the offense unless:

1) the deadly weapon or firearm has been *specifically* pled *as such* (using the nomenclature "deadly weapon") in the indictment (Applies where the verdict reads "guilty as charged in the indictment". See *Barecky*, supra);

2) where not specifically pled in "1)" above as a deadly weapon or firearm, the weapon pled is per se a deadly weapon or a firearm; or,

3) a special issue is submitted and answered affirmatively.[4]

No longer will a verdict "amount to" or "necessarily imply" an affirmative finding of use or exhibition of a deadly weapon or firearm. We will no longer look to the facts of the case to permit an "implied" affirmative finding as the court of appeals, relying on prior case law, did in this case.[5] We overrule all prior holdings to the contrary.

■ In the instant case, the court entered an affirmative finding of use or exhibition of a deadly weapon when "deadly weapon" was not specifically pled in the indictment. The jury was also the fact finder in the punishment phase of the trial, but no special issue was submitted at the close of the punishment stage. The affirmative finding was therefore improperly entered on the judgment. In such a case, we may reform the judgment as necessary, Art. 44.24(b), V.A.C.C.P., and delete the improper finding. See *Barecky*, supra at 945, and cases cited therein.

Accordingly, we order that the affirmative finding entered in the judgment, to-wit: "THE COURT FINDS THAT THE DEFENDANT HEREIN USED OR EXHIBITED A DEADLY WEAPON DURING THE COMMISSION OF SAID OFFENSE" be stricken from the judgment.

The judgment of the court of appeals is affirmed. The judgment of the trial court is reformed and affirmed.

ONION, P.J., concurs in the result.

CLINTON, Judge, concurring.

In *Moser v. State*, 602 S.W.2d 530 (Tex. Cr.App.1980), the Court rejected a due pro-

---

**4.** The concurring opinion by Clinton, J., would require "notice" in the form of a formal pleading in the indictment before entry of such a finding would be proper. Such a requirement may well *add* an element to whatever offense was alleged, a reasonable doubt about which would lead to a not guilty verdict. Cf. *Tew v. State*, 551 S.W.2d 375 (Tex.Cr.App.1977); *Rounsavall v. State*, 480 S.W.2d 696 (Tex.Cr.App. 1972); *Romay v. State*, 442 S.W.2d 399 (Tex.Cr. App.1969); and *Wheat v. State*, 442 S.W.2d 363 (Tex.Cr.App.1969). This is a valid impediment to such a requirement. Moreover, the corpus of what we are dealing with is *eligibility for parole*,

not what the penalty range or sentence will be. Though not rasied in this case, the "notice" requirement of the due process clause of both the 5th and 14th Amendments of the U.S. Constitution and the due course of law clause in Art. 1, § 19 of the Texas Constitution must be examined in that light when properly before us.

**5.** This holding will not preclude appellate review of the facts to determine the sufficiency of the evidence to *support* the finding once the finding has been *properly* made.

cess contention through the process of implying or inferring from language in the indictment, in the charge and in the verdict that the phrase "guilty of murder as charged in the indictment ... must amount to an affirmative finding that the appellant used a firearm in the commission of the offense," *id.*, at 533. Today, as I understand the majority opinion, it seeks to pull the bench and bar out of the *Moser* "quagmire" of implied or inferred findings. Thus it expressly disapproves language in *Moser* and other cases that "would perpetuate this practice."

The effort by the Court to clear up much uncertainty and some confusion surrounding Article 42.12, § 3f(a)(2), V.A.C.C.P., is overdue, but in my view it fails to address a threshold problem presented by the factual situation in this cause and every other one in which the charging instrument does not expressly allege that a weapon said to have been used or exhibited is a "deadly weapon." When denial of grant of probation by a trial court and deprivation of freedom and liberty by extended confinement in a penitentiary hang on that very question, due process and due course of law require that the trier of fact at any stage of trial on criminal action not be authorized to make an adverse finding against an accused unless and until the issue has been tendered by the pleading of the State.

The majority lays down the rule that an affirmative finding by a jury must be made in response to a special issue submitted during punishment stage of trial with two exceptions. (Opinion, p. 396). When a trial court is trier of fact presumably it must respond to a specific inquiry made in effect by the judge. However, in either case the majority will allow the inquiry to be made in at least two instances in which the issue was never expressly tendered by the charging instrument.

In basic rudimentary fundamentals trials of civil case and of a criminal action are conducted under the same principles. Simply stated, "[a] trial generally includes a judicial examination of the issues between the parties, whether of fact or of law." *Railroad Commission v. Shell Oil Co.*, 139 Tex. 66, 161 S.W.2d 1022, 1029 (1942). Issues are tendered by pleadings, thereby among other functions giving the opposite party notice of what is claimed—in a criminal action the State through its charging instrument and the accused through special pleas and plea to the charge. Compare 56 Tex.Jur.2d 404, §§ 70 and 71 and *id.*, 408–409, §§ 74 and 75; see Article 36.01, V.A.C.C.P. Until the charging instrument has been read in open court and a plea entered by accused, no issue is joined by the parties. *Castillo v. State*, 530 S.W.2d 952, 954 (Tex.Cr.App.1976), quoting approvingly from *Johnson v. State*, 118 Tex.Cr.R. 291, 42 S.W.2d 782, 783 (1931). Issues that have been joined are ultimately resolved by the trier of fact informed by germane law applicable to the facts of the matter. Article 36.14 and 36.16, V.A.C.C.P.; cf. T.R. C.P. Rules 277 and 279. A verdict of a jury "must be supported by the pleadings, the evidence and the facts admitted of record," 57 Tex.Jur.2d 43, § 409.

From the legislative history recounted in the majority opinion at note 1 one cannot be sure what kind of "affirmative finding" Senator Meier and his colleagues had in mind. However, in parlance of the civil side it is a commonly used term. See, e.g., T.R.C.P. Rule 277, and General Commentary following Rule 279.[1] Thus a general practitioner is not only familiar with what an "affirmative finding" is but also knows its purpose and function. So it is perfectly reasonable to attribute to legislators who are lawyers that knowledge and understanding.

Therefore, in the jurisprudence of this State special issues and affirmative findings are neither new nor novel, and this

---

1. Issues are submitted in the affirmative when called for by a proper pleading and evidence, T.R.C.P. Rules 277 and 279, in response to which the jury may make "an affirmative finding," Rule 277. *Denbow v. Standard Acc. Ins. Co.*, 143 Tex. 455, 186 S.W.2d 236, 238 (1945); see *Texas Employers Ins. Assn. v. Patterson*, 144 Tex. 573, 192 S.W.2d 255, 257 (1946).

Court should have no hesitancy in finding in relevant civil rules an analogue to the provisions of Article 42.12, 3f(a)(2), V.A.C. C.P.

However, some offenses do not require use or exhibition of a deadly weapon, so ordinarily an accused would not be put on constitutional notice by the State's pleading, the charging instrument, that the issue is in his criminal action. Under the common principles summarized above, the issue is really not in the case, and an accused does not join issue on that matter. Yet, according to the majority the inquiry may still be made. On that point I simply cannot agree.

When the State intends to invoke provisions of § 3f(a)(2), there is no valid impediment to a requirement that it include in its charging instrument an averment of that which it expects to prove—that is, the accused used or exhibited a deadly weapon during the commission of the alleged offense or during the immediate flight therefrom. Indeed, an affirmative finding may not be properly made by any fact finder under § 3f(a)(2) without that being "shown." And according to Article 21.03, V.A.C.C.P., "Everything should be stated in [a charging instrument] which is necessary to be proved."

Though I would require an appropriate allegation of what the State intends to prove in this regard—perhaps a simple averment in a separate paragraph of the charging instrument—nevertheless if the Court will not now require an allegation of that which must be proved, I concur with its finding that a special issue must be submitted to the jury. However, when it is not pleaded as a deadly weapon, to avoid our still having to look to the facts of the case in order to determine whether a particular weapon in question is per se a deadly weapon, we should eliminate category 2 at page 9, and subject it to a special issue as well.

Further, though not directly presented in this cause the majority would have the special issue submitted during the punishment stage of trial, believing that is "the

better practice," n. 3. While it is true that Article 37.07(a), V.A.C.C.P., provides that a verdict must be general, it also adds: "When there are special pleas on which a jury is to find [it] must say in [its] verdict that the allegations in such pleas are true or untrue." It will be said that "special pleas" are those of an accused alluded to in Article 27.05, V.A.C.C.P., but the literal language of Article 27.01, V.A.C.C.P.— "The primary pleading ... on the part of the State is the [charging instrument]."—is broad enough to admit a "special plea" by the State.

Moreover, we have held that a finding pursuant to § 3f(a)(2) is appropriate only when it is shown that "the defendant [himself] used or exhibited a deadly weapon." *Travelstead v. State*, 693 S.W.2d 400 (Tex. Cr.App.1985). There will be trials in which a jury is trier of fact on guilt but the trial court alone will assess punishment. Though the jury may well have concluded that an accused did not himself use or exhibit a deadly weapon but was criminally responsible under the law of parties, the judge of the trial court will be free to make a contrary affirmative finding. To allow the trial court to find that which the jury may have rejected infringes the right to trial by jury and smacks of a violation of due process and due course of law.

In the case at bar, however, as the majority points out, the indictment did not aver the knife to be a deadly weapon nor did the charge allude to it as such; so the jury did not find it to be one. Not being the trier of fact the trial court was not authorized to make an affirmative finding.

For reasons given I join only the judgment of the Court.

TEAGUE, Judge, concurring and dissenting.

The majority opinion correctly holds that the Dallas Court of Appeals erred when it held, see *Polk v. State*, (Tex.App.—Dallas No. 5–82–01214–CR, Unpublished Opinion, January 12, 1984), that the trial judge did

not err when he entered an affirmative finding in the judgment of conviction that John Allen Polk, appellant, used or exhibited a deadly weapon during the commission of the offense of attempted murder.

There are actually three legal reasons why the trial judge erred, namely: such allegation was not pled in the indictment; the jury, although the trier of fact, was not requested at the guilt stage of the trial to resolve the issue; and the verdict, "We, the jury, find the defendant guilty of the offense of attempted murder as charged in the indictment," does not amount to an affirmative finding that a deadly weapon had been used or exhibited in the commission of the offense. But, did this Court not hold in *Ex parte Thomas*, 638 S.W.2d 905 (Tex.Cr.App.1982), that failure to satisfy one of the above requirements will cause a trial judge's entry in the judgment of conviction, that the defendant used or exhibited a deadly weapon during the commission of the offense, etc., to be a null and void act?

Appellant was not given any notice in the charging instrument that in the event he was found guilty of attempted murder by the jury that the trial judge would make a finding in the judgment that he, appellant, used or exhibited a deadly weapon during the commission of the offense of attempted murder. The majority, however, advises us that today it is unnecessary to resolve the issue, whether appellant was entitled to notice that the State would seek a finding in the judgment of conviction, because such issue is not properly before us. In light of the fact that the majority opinion amounts only to an advisory opinion, I must ask: "Why not go ahead and answer the above question?"

But, does the majority opinion implicitly hold that such need not be pled in the charging instrument? See its fn. 4. It is at this point that I must register my dissent to the majority opinion.

It is axiomatic that the right of a defendant "to demand the nature and cause of the accusation against him, and to have a copy thereof," as guaranteed by Art. 1, Sec. 10 of the Texas Constitution, serves several important objectives, the most important of which is that it furnishes notice of the exact charge against the accused, and, by implication, what punishment might be assessed should the accused be found guilty, thus permitting preparation of a specific defense or mitigation of punishment.

However, because the use of a deadly weapon was not a necessary element of the offense of attempted murder, it was not necessary for the State to plead that allegation in the charging instrument—as an element of the offense. However, whether a deadly weapon was used in the commission of the offense was a fact issue to be decided by the jury, which was the exclusive trier of the factual issues in this cause. *Ex parte Thomas*, supra.

Although a finding that a deadly weapon or firearm was used or exhibited by the defendant during the commission of an offense does not enhance the punishment, nevertheless, if the issue is resolved against the defendant, such finding amounts to extending the time when the defendant will become eligible for discretionary parole. His punishment, however, is not changed. Cf. *Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967); *United States v. Taylor*, 716 F.2d 701 (9th Cir.1983); *United States v. Tramunti*, 377 F.Supp. 6 (U.S.N.Y.1974).

The majority opinion also suggests that "an affirmative finding may be made if the trier of fact responds to a special issue submitted during the punishment stage of trial." I am unable to agree with this statement. Therefore, I must once again dissent.

If the issue is to be submitted, it should be submitted only at the guilt stage of the trial. The determination by the trier of the facts, whether a deadly weapon was used or exhibited during the commission of the offense by the accused, actually goes to the commission of the offense.

To the result the majority opinion reaches, I concur. To all of the unnecessary obiter dictum that is found in its advisory

opinion, I must respectfully dissent to the majority opinion.