Gandabhai Motibhai PATEL, Appellant,

v.

The STATE of Texas, Appellee.

No. 6-85-074-CR.

Court of Appeals of Texas, Texarkana.

Dec. 4, 1986.

Vernard G. Solomon, Marshall, for appellant.

Tim Cone, Asst. Crim. Dist. Atty., Gilmer, for appellee.

PER CURIAM.

Gandabhai Motibhai Patel appeals a murder conviction from the 115th District Court in Marion County. Patel was initially indicted on four murder charges in Upshur County. The instant case was transferred on a change of venue to Marion County. Patel properly filed his notice of

intention to raise the issue of insanity at the time of the offense and gave notice to the State of Texas. He was found guilty by the jury in the shooting death of one of his minor children, and he was sentenced to fifteen years in the Texas Department of Corrections.

Patel is a native of India and was the owner of the Upshur House Motel in Gilmer, Texas, where he lived with his wife and three children. On October 25, 1983, the Gilmer police and motel employees found the bodies of Mrs. Patel and the couple's three children in the family's apartment at the motel. Each had died from a gunshot wound in the abdomen.

Patel apparently fled the scene in the family car and was later discovered by a Department of Public Safety trooper at a roadside park near Marshall, Texas, on the evening of the same date. The trooper approached Patel's car and attempted to get him to step out. A shot was fired, and Patel was found to have sustained a gunshot wound in the abdomen from his own gun. Following treatment of the wound at Memorial Hospital in Marshall, Patel was transferred back to Upshur County.

While in Memorial Hospital, Patel was examined by Dr. Lake Littlejohn, a Marshall psychiatrist. Dr. John Hall, a Longview psychiatrist, examined Patel pursuant to a court order after he was transferred back to Gilmer. Based upon Dr. Hall's report to the court, Patel was transferred to Rusk State Hospital to determine his competency to stand trial. Patel was diagnosed as being incompetent at that time to stand trial and was returned to Upshur County. An Upshur County jury found him to be incompetent to stand trial, and he was committed to Rusk State Hospital for treatment. After treatment, the doctors of the Rusk State Hospital determined him to be competent, and the trial involved in the present case proceeded in Marion County.

Patel raises four grounds of error. He contends that the attorney for the State improperly informed the jury that a finding of insanity prevented punishment for the shootings and that the assistant district attorney's remark violated Tex.Code Crim. Proc.Ann. art. 46.03 (Vernon 1979 & Supp. 1986). He also contends that the trial court erred in admitting into evidence a clipping from a newspaper found among his papers, because of its highly prejudicial nature and lack of probative value. He further contends that the trial court erred by making an affirmative finding that a deadly weapon was used in the commission of the offense without such a finding being made by the jury. He urges that the evidence is insufficient to support the jury's implied finding of sanity at the time the offense occurred.

During the voir dire examination, Paul Hanneman, the Upshur County assistant district attorney, made a statement to the jury which Patel contends improperly informed the jury that the finding of insanity prevented his punishment for the shootings. Hanneman's statement is as follows:

Now in this case the defense has pled "not guilty" and filed notice of intent to raise the issue of insanity. This in effect says that even if it's proved that the defendant did the crime he cannot be punished because he was insane at the time.

Patel's attorney, Vernard Solomon, made the following objection:

Your Honor, we are going to object. The terminology found in the statute is not that he cannot be punished. It's that he is not responsible. A person who is insane at the time of the commission of the offense is not responsible for the actions that occurred during that period of time. There is no allegation and no statement in the law that says he cannot be punished. That statement is made for the purpose of inflaming the minds of the jurors against this defendant in this case.

The objection was overruled at that time by the trial court, but later in the trial, the trial court reversed its ruling, sustained the objection, and instructed the jury to disregard the comment. The motion for mistrial was taken under advisement.

Article 46.03 of the Texas Code of Criminal Procedure, section 1, subsection (e), states as follows:

> The court, the attorney for the state, or the attorney for the defendant may not inform a juror or a prospective juror of the consequences to the defendant if a verdict of not guilty by reason of insanity is returned.

Tex.Code Crim.Proc.Ann. art. 46.03, § 1(e) (Vernon Supp.1986).

■ In the case of *Johnson v. State*, 698 S.W.2d 154 (Tex.Crim.App.1985), the Court of Criminal Appeals reaffirmed the proposition that generally, any harm from an improper statement to the jury is remedied when the court instructs the jury to disregard unless the remark is so inflammatory that the prejudicial effect cannot be removed by an admonition. In order to fall within this requirement, the argument must be extreme, manifestly improper, inject new and harmful facts into the case, or violate a mandatory statutory provision. *Logan v. State*, 698 S.W.2d 680 (Tex.Crim. App.1985). Although these cases speak generally to final arguments or summations, the same principle would apply to statements made on voir dire. Whether an argument is harmful enough to warrant reversal is ultimately determined on the basis of the argument's probable effect on the minds of the jurors. *Logan v. State*, *supra*.

■ In the present case, the trial court's instruction to disregard was not prompt. However, the court did change the ruling before the voir dire was completed and gave the requested instruction to disregard. According to the record, the motion for mistrial which was taken under advisement by the judge was not pursued further by Patel's counsel. Counsel for Patel had a duty to seek a ruling on this

portion of his motion. Patel received the instruction he requested, and under these circumstances, Patel's motion for mistrial is considered waived by his failure to secure a ruling.[1] *Collection Consultants, Inc. v. State*, 556 S.W.2d 787 (Tex.Crim. App.1977), *dism'd*, 436 U.S. 901, 98 S.Ct. 2228, 56 L.Ed.2d 399 (1978). Thus, even if the prosecutor's improper remark was sufficiently prejudicial to require reversal, any error was waived by the failure to secure a ruling on the motion for a mistrial.

■ Patel contends error occurred in the admission of Exhibit 32A into evidence. This exhibit is a copy of an editorial from the Dallas Times Herald by Felix McKnight entitled "Sorry, Crime Does Pay," which Patel had apparently clipped from the paper. The article was found as part of the contents of a file folder obtained from Patel's room at the Upshur House. The article bemoans the inefficiency of the Texas criminal justice system. The exhibit was offered as a part of numerous exhibits found in the file folder among Patel's belongings. The editorial constitutes evidence relevant to Patel's state of mind. We do not find the article of such a prejudicial nature which would require its exclusion.

■ Patel argues that the trial court erred by including an affirmative finding of the use of a deadly weapon in its judgment and sentence when no finding of such was made by the jury. The case of *Polk v. State*, 693 S.W.2d 391 (Tex.Crim.App.1985), limits the entry of such an affirmative finding to three situations: (1) where the deadly weapon has been specifically pled as such and the verdict reads "guilty as charged in the indictment;" (2) where not specifically pled as a deadly weapon or firearm, but the weapon pled is per se a

---

1. Rule 52 of the Rules of Appellate Procedure was not in effect at the time of this trial. Section (a) of this rule provides as follows:

   In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make if the specific

grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion. If the trial judge refuses to rule, an objection to the court's refusal to rule is sufficient to preserve the complaint. It is not necessary to formally except to rulings or orders of the trial court.

deadly weapon and the verdict reads "guilty as charged in the indictment;" and (3) where a special issue is submitted and answered affirmatively. However, the *Polk* opinion was decided after the trial of the present case. Prior to the *Polk* opinion, the cases of *Chavez v. State,* 657 S.W.2d 146 (Tex.Crim.App.1983), *Ex parte Moser,* 602 S.W.2d 530 (Tex.Crim.App. 1980), and *Hart v. State,* 581 S.W.2d 675 (Tex.Crim.App.1979), permitted the trial court to construe an implied finding of use of a deadly weapon from the jury's findings. In the *Polk* opinion, the Court of Criminal Appeals expressly disapproved any language in *Moser* or *Chavez* that perpetuated the practice of "implied" findings.

In the present case, the indictment contains language which is identical to the wording of the indictment in *Ex parte Grabow,* 705 S.W.2d 150 (Tex.Crim.App.1986). Both indictments allege that death was caused "by shooting him with a gun." The court in the *Grabow* case found that a jury finding of "guilty as charged in the indictment" would not support an affirmative finding, a gun not being a deadly weapon per se. Therefore, the present case does not fall into any of the three categories required by the *Polk* decision for such an affirmative finding.

Following the guidance of the Court of Criminal Appeals in the *Polk* case, we reform the judgment pursuant to Tex.Code. Crim.Proc.Ann. art. 44.24(b) (Vernon Supp. 1986) to delete the trial court's affirmative finding.

Patel further contends that the evidence is insufficient to support the jury's guilty verdict which by necessity includes an implied finding of sanity at the time the offense occurred.

The defense of insanity is an affirmative defense which shifts the burden of proof to the defendant who must prove the affirmative defense by a preponderance of the evidence. Tex.Penal Code Ann. § 2.04(d) (Vernon 1974).[2]

In the case of *Van Guilder v. State,* 709 S.W.2d 178 (Tex.Crim.App.1985), the Court of Criminal Appeals stated the following:

[W]e hold that in reviewing a case involving an affirmative defense, the court of appeals must review the evidence on the affirmative defense by looking at the evidence in the light most favorable to the implicit finding by the jury with respect to such affirmative defense and then determine, by examining all the evidence concerning the affirmative defense, if any rational trier of fact could have found that the defendant failed to prove his defense by a preponderance of the evidence. The court of appeals is limited in its review using this preponderance standard to evidence submitted on the issue of the affirmative defense in question. This review is called for when the defendant is contesting the sufficiency of the evidence to support his conviction because of his assertion that he adequately proved his affirmative defense. It is important to note that this analysis does not involve the appellate court in any fact finding function. The test evaluates the legal sufficiency of the evidence using a legal standard. There must be no reweighing or reclassifying of the evidence by the appellate court.

Applying the above standards of review to the evidence, it is necessary to review all the evidence concerning the affirmative defense to determine if any rational trier of fact could have found that Patel failed to prove his insanity by a preponderance of the evidence.

Dr. Srinivasan, a psychiatrist at the Rusk State Hospital maximum security unit, examined Patel. Srinivasan theorized that Patel might have a brain tumor that could not be detected, but if Patel did not have a brain tumor, the diagnosis was schizophre-

---

2. The Texas law on insanity provides:
   Section 8.01. Insanity
      (a) It is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease

or defect, did not know that his conduct was wrong.

Tex.Penal Code Ann. § 8.01(a) (Vernon Supp. 1986)

nia. He testified that Patel has paranoid delusions that people do not like him, that people are against him, that they were trying to run him out of town, and that they were trying to take his business away. Srinivasan also indicated that Patel suffered from hallucinations and "flat" emotions, meaning that he had an inability to show emotion. He stated that he found Patel to be psychotic. As to the mental condition of Patel on the date of the shootings, Dr. Srinivasan testified as follows:

> Of course, this is speculation because I wasn't there to make, you know, to make the diagnosis on his part. But in reviewing all his records and examining him my feeling is that on that particular date he was probably psychotic.

Dr. Srinivasan further concluded that Patel did not know that the act of killing his family was wrong. He testified that some bright people might be aware of his psychotic symptoms, but the average layman would not be able to see the symptoms. Srinivasan had available for his consideration some undated writings of Patel which reflect a paranoia and some rather bizarre thoughts.

Dr. Lake Littlejohn examined Patel in Marshall Memorial Hospital, where he was being treated for his gunshot wound, to determine if he was a danger to other patients located in the hospital's intensive care unit. Dr. Littlejohn testified that, upon examining Patel, he became aware of "the delusional system that [Patel] was bound up in, which involved somehow some people who leased a restaurant in his hotel or motel, and this feeling that they were somehow controlling him, . . . ." Dr. Littlejohn further testified that Patel had apparently functioned "fairly well" in the community and "didn't look sick," but was mixed up and suffering from distorted thinking of a paranoid nature, which had probably existed for some months or perhaps a year or more. Referring to the act of Patel's shooting his family, Dr. Littlejohn stated that he thought Patel was being driven by a delusional system and was following the dictates of that system, be-

lieving it was right and that Patel's ability to make decisions of right and wrong was markedly impaired.

Dr. John Hall evaluated Patel on the basis of an hour and a half visit while Patel was in the Upshur County jail. Although Dr. Hall did not feel that he had sufficient information and sufficient time to make an evaluation, he testified that he would not disagree with Dr. Srinivasan's conclusion that Patel suffered from a mental disease that prevented him from knowing right from wrong at the time of the shootings.

The State presented twelve lay witnesses on the sanity issue, which included people who had done business with Patel, police officers who saw Patel shortly after his arrest, law enforcement officers who saw Patel after he had been released from Memorial Hospital and brought back to Gilmer, and two long-time acquaintances of Patel with whom he had visited the Sunday before the shooting occurred. In summary, these witnesses testified that Patel was a good businessman, a quiet man, a man they had never seen angry, and a man who appeared normal in every aspect.

■ Jury findings that a defendant was sane at the time of the offense may be upheld even though no medical expert testified to that effect. *Hernandez v. State*, 157 Tex.Crim.R. 112, 247 S.W.2d 260 (1952). The State need not present expert medical testimony that the defendant was sane to counter the defense experts, who testify that the defendant was insane at the time of the offense. *Graham v. State*, 566 S.W.2d 941 (Tex.Crim.App.1978).

In the case of *Van Guilder v. State*, *supra*, the Court of Criminal Appeals held that the Courts of Appeals do not have jurisdiction to review factual sufficiency claims in criminal cases. The Court stated as follows:

> To allow the court of appeals to evaluate the facts in a criminal case and to reverse based on their individual belief that a jury finding is against the great weight and preponderance of the evidence both misconceives the burden of proof required for criminal convictions

and usurps the function of the jury. In effect, this would make the courts of appeal a thirteenth juror with veto power. Neither the Texas constitution nor [*Combs v. State*, 643 S.W.2d 709 (Tex. Crim.App.1982)] supports such a standard of review.

However, we are in agreement with the reasoning in *Meraz v. State*, 714 S.W.2d 108 (Tex.App.-El Paso 1986, no pet.), in which the court determined that the Court of Appeals has jurisdiction to review factual determinations in the trial court to determine if they are against the great weight and preponderance of the evidence. Because of the recent decisions of the Court of Criminal Appeals, we have undertaken to review this case under both standards.

Numerous lay witnesses who observed Patel near the time of the offense testified to his normal behavior. However, if we conclude that Dr. Srinivasan was correct that laymen could not recognize the psychotic behavior of Patel, then we must conclude that the lay witness testimony was consistent with Dr. Srinivasan's diagnosis. To follow this reasoning would allow an expert to wipe out all lay testimony in any case by testifying that a lay person could not detect the symptoms of insanity. We believe that this is a matter for the jury's determination.

■ The issue of insanity is not strictly a medical interpretation, but it is an issue that also invokes ethical and legal considerations as well. In the case of *Graham v. State, supra,* the Court said:

The issue is not strictly medical, and expert witnesses, although capable of giving testimony that may aid the jury in its determination of the ultimate issue, are not capable of dictating determination of that issue. Only the jury can join the non-medical components that must also be considered in deciding the ultimate issue. That ultimate issue of criminal responsibility is beyond the province of expert witnesses.

The court in the *Graham* case goes on to say:

Ultimately the issue of insanity at the time of the offense excusing criminal responsibility lies in the province of the jury, not only as to the credibility of the witnesses and weight of the evidence, but also as to the limits of the defense itself.... In deciding whether the abnormal mental condition of the accused will excuse criminal responsibility, the jury is not restricted to medical science theories of causation. The connective "result" requirement of the issue encompasses the inarticulable ethical component, which includes imperatives of free will, self control, and responsibility for one's acts that are fundamental to our notions of man, and that are the foundation of social relations and criminal responsibility built on such a concept of man.

■ Reviewing the entire testimony before the jury would include testimony given by Dr. Srinivasan on cross-examination. According to Dr. Srinivasan, the main thrust of Patel's plan, which was brought about by his mental illness, was to commit suicide. The killing of the members of his family was incidental to his suicide, because he did not want to leave them without adequate means of support. Yet on cross-examination, Dr. Srinivasan admitted that he had no idea why Patel would have driven approximately sixty miles from the scene of the crime before he was apprehended. The cross-examination also brought out that Patel had told his doctor that his wife had asked him to get an ambulance, and that he realized that at this point he may have done something wrong. The circumstances surrounding the offense are relevant to the jury's determination of the sanity issue. *Schuessler v. State*, 719 S.W.2d 320 (Tex.Crim.App.1986);[3] *Graham v. State, supra.*

The cross-examination also revealed that Dr. Srinivasan based most of his diagnosis on what he had been told by Patel, the defense attorney, and others. He further

3. The Court of Appeals opinion is found at 647 S.W.2d 742 (Tex.App.-El Paso 1983).

admitted it would have strengthened his diagnosis if the lay people had testified concerning unusual behavior by Patel over the past two years.

 In reviewing the entire record, we find that a rational trier of fact could have determined that Patel failed to prove the defense of insanity by a preponderance of the evidence. We further find that the evidence is sufficient to support the jury's implied finding of sanity.

The judgment of the trial court is affirmed with the deletion of the affirmative finding of a deadly weapon as required by *Polk v. State, supra.*