# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00282-CR

**Richard Herbert, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NO. 2023577, HONORABLE BOB PERKINS, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury found appellant Richard Herbert guilty of aggravated sexual assault and assessed punishment at sixty years= imprisonment. Herbert raises two issues on appeal, that the evidence was factually insufficient to support his conviction and that the trial court erred in making an affirmative finding in the judgment on the use of a deadly weapon. We will affirm the judgment.

### Factual Background

The State presented nine witnesses, including the complainant F.P., to establish its case against Herbert for aggravated sexual assault. Herbert did not testify, but relied on the cross examination of the State=s witnesses and his videotaped statement in support of his defense that he had consensual sex with F.P. Several officers testified to their investigation of the case. Austin Police Officer Jesus Borunda

recounted responding to a dispatch reporting a burglary on the morning of September 9, 2002. He received a brief description of the suspect as a short Hispanic man wearing a blue striped shirt and black jeans. It was then reported that a black male matching the description was seen boarding a nearby bus. Borunda stopped the bus and initially detained a Hispanic man wearing a plaid shirt and black jeans. After being advised by another officer that the suspect was a black male, Borunda consulted with the driver of the bus who pointed out Herbert crouching behind a bench appearing to tie his shoe. Borunda took both Herbert and the Hispanic man to a place where F.P. could see them and F.P. identified Herbert as her attacker.

Borunda interviewed F.P. in her apartment and she recounted the details of the attack to him in Spanish.[1] He testified that F.P. told him that Herbert must have walked into her unlocked apartment while she was sleeping in her bedroom with her young child. She heard noise and saw Herbert in the apartment. F.P. got out of bed thinking that he was a maintenance man; she did not find him in the apartment and locked the front door. Borunda then testified that F.P. told him she was confronted by Herbert as she walked back into the living room from the front door. Herbert held a knife to her throat, lifted her dress and raped her. After Herbert was finished, she was able to get the knife away from Herbert and escape, leaving the child in the house. She returned with neighbors to find the child unharmed, but the

---

[1] It was established at trial that F.P. is an immigrant from Honduras and does not proficiently speak or understand the English language.

2

phone had been unplugged. The back window was left open. F.P. identified the knife used in the attack as one found on her living room floor.

Borunda then transported F.P. to the hospital where she was examined by a nurse. Other officers testified similarly concerning the investigation, collection of evidence and apprehension of Herbert. Jackie Switzer, a trained sexual assault nurse examiner, testified that she examined F.P. at around 12:30 in the afternoon. Switzer was permitted to briefly testify as to what F.P. told her had happened in the attack. Switzer testified that her examination revealed no trauma to F.P.=s genital area, but there were abrasions on the cervix and vaginal walls. She collected samples for a rape kit which were submitted to the Texas Department of Public Safety. Switzer also testified to discovering marks on F.P.=s shoulder which she stated were consistent with the serrated edges of the knife used in the attack.

Austin Police Department fingerprint examiner, Alvina Ranney, testified as to her examination of evidence collected from F.P.=s apartment. She testified that she found Herbert=s left thumb print on the right side of the blade of the knife. She also found Herbert=s left palm print on lifts taken from both the exterior of the front door to the apartment and the topside surface of a windowsill.

Texas Department of Public Safety DNA analyst Gary Molina testified that he conducted testing on the rape kit collected from F.P. and samples taken from Herbert. Molina stated that he detected semen on the vaginal swab taken from F.P. during the sexual assault examination and that it was consistent with Herbert=s DNA. He testified that the probability of randomly selecting a person from any racial group whose DNA would be consistent with the semen would be over 1 in 50,000,000,000,000.

Austin Police Department detectives Paula Belville and Jean Clifton interrogated Herbert regarding the incident. Detective Belville testified that her interrogation technique was to allow Herbert to give his story, then to confront him with inconsistencies between his account and the evidence of the crime that she knew in order to see if he would change his story. A videotape of this interrogation was introduced into evidence in which Herbert=s account of the facts did change. He consistently denied the sexual assault, however, and stated that F.P. invited him into her apartment and the two had consensual sex. He also gave a written statement consistent with his claim that F.P. had initiated the encounter.

F.P. testified through a translator. She described waking on the morning of September 9, 2002 with her eight-month-old child also sleeping in her bed. She saw a man in her house who said something to her in English, but she assumed it was a maintenance person who was expected to fix the air conditioner. She testified that, after about fifteen minutes, she got up, locked the front door and went into the living room. A man then jumped out from behind a wall and threatened her with a knife. She identified Herbert as that man. F.P. testified that she did not understand what Herbert was saying because he was speaking in English, but that he pushed her to a couch and put the knife to her neck. He took off her clothes and his pants and raped her. She testified that after Herbert finished, she was able to pull the knife away from him and toss it behind the sofa. Herbert grabbed her by the hair, but she was able to escape when he squatted down to pick up the knife. She quickly returned to the apartment with neighbors, discovered her child unharmed and the police were called.

*Discussion*

4

Herbert contends in his first issue that the evidence was factually insufficient to support the jury=s verdict. In conducting a factual sufficiency review, we ask whether a neutral review of all of the evidence, both for and against the finding of guilt, demonstrates that the proof of guilt is either so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the jury=s determination. *See Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Due deference must be accorded the fact finder=s determinations, particularly those concerning the weight and credibility of the evidence. *Id.* at 9. We may disagree with the fact finder only when the record clearly indicates that such a step is necessary to prevent a manifest injustice. *Id*.

Herbert argues that the jury=s verdict was manifestly unjust because his statement was consistent with the evidence and F.P.=s testimony was not. He points to the fact that his fingerprint only appeared on the blade of the knife which is consistent with his statement that he moved the knife away from the couch in which he and F.P. were having sex. Had he threatened F.P. as she testified, he contends that his fingerprints would have been found on the handle of the knife. Herbert further argues that F.P.=s testimony that she tossed the knife aside is inconsistent with the fact that her fingerprints were not found on the knife. Austin Police Department fingerprint examiner Ranney testified, however, that the absence of a person=s fingerprint on the knife does not mean that a person did not hold the item.

In reaching its verdict, the jury was ultimately asked to chose between Herbert=s videotaped and written characterization of his encounter with F.P. as consensual sex and F.P.=s trial testimony that she was attacked and raped. F.P.=s testimony was supported by other evidence in the record including the testimony from police officers regarding her demeanor after the attack and the marks on her shoulder that

5

were consistent with the serrated edge of the knife. In reaching a guilty verdict, the jury clearly credited F.P.=s testimony over Herbert=s statements. We defer to the jury=s evaluation of credibility and demeanor in determining what weight to give these contradictory accounts. *See Johnson*, 23 S.W.3d at 8. We find the evidence factually sufficient and overrule Herbert=s first issue.

In his second issue, Herbert contends that the trial court erred in making a finding of the use of a deadly weapon without submitting a special issue to the jury. The Court of Criminal Appeals has recognized three instances in which a court may enter in a judgment that the jury made an affirmative finding that a defendant used or exhibited a deadly weapon during the commission of an offense:

(1) Where the indictment specifically alleges the words Adeadly weapon@ describing the weapon used and the verdict reads Aguilty as charged in the indictment@;

(2) Where the indictment names a weapon which is *per se* a deadly weapon and the verdict reads Aguilty as charged in the indictment@; and

(3) Where a special issue is submitted to the trier of fact and is answered affirmatively.

*Davis v. State*, 897 S.W.2d 791, 794 (Tex. Crim. App. 1995) (citing *Polk v. State*, 693 S.W.2d 391, 396 (Tex. Crim. App. 1985)). The State proceeded on count two of the indictment against Herbert which reads:

And the Grand Jury further presents that on or about the 9th day of September A.D. 2002, and before the presentment of this indictment in the County of Travis and the State of Texas, RICHARD HERBERT did then and there intentionally and knowingly cause the penetration of the female sexual organ of [F.P.] by defendant=s sexual organ, without the consent of [F.P.], and in the course of the same criminal episode RICHARD HERBERT used and exhibited a deadly weapon, to wit: a knife, which in the manner of its use was capable of inflicting death or serious bodily injury.

6

The charge submitted to the jury provided a definition of the term deadly weapon and required a finding that Herbert used or exhibited a deadly weapon in order to determine his guilt of aggravated sexual assault. At the conclusion of the guilt or innocence portion of Herbert=s trial, the presiding juror announced that the jury found him, Aguilty of the offense of aggravated assault as alleged in the indictment.@ The written verdict of the jury also reads, A[w]e the jury, find the defendant, Richard Herbert, guilty of the offense of Aggravated Sexual Assault as charged in the indictment.@ Under these circumstances, we conclude that the trial court was entitled to make a written finding of the use of a deadly weapon in the judgment. *See Davis*, 897 S.W.3d at 794. We overrule Herbert=s second issue.

Having overruled both of Herbert=s issues, we affirm the judgment.

Mack Kidd, Justice

Before Chief Justice Law, Justices Kidd and Puryear

Affirmed

Filed: March 18, 2004

Do Not Publish

7