Opinion issued March 25, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-08-00723-CR

———————————

JOSEPH BAILEY MALONE, Appellant

V.

THE STATE OF
TEXAS, Appellee



 



 

On Appeal from the 176th District Court

Harris County, Texas



Trial Court Case No. 1147833

 



 

MEMORANDUM OPINION

          Appellant,
Joseph Bailey Malone, was convicted by a jury of aggravated sexual
assault.  See Tex. Penal Code Ann. §§ 22.011(b)(1), .021(a)(1)(A)(i),
(2)(A)(iv), (c) (Vernon Supp. 2009).  The
jury assessed punishment at 25 years’ imprisonment.  See Tex.
Penal Code Ann. § 22.021(e) (Vernon Supp. 2009).  In two points of error, Malone contends the
evidence is factually insufficient (point one) and the evidence is legally
insufficient to support a deadly‑weapon finding in the judgment (point
two).  We affirm.

Background

 

          The complainant, J.H., met Malone when
she worked at a department store.  Malone
was a security officer at the store.  J.H.’s
father testified that when he and J.H.’s mother found out J.H. was in a
relationship with Malone, the family discussed whether it was good idea for
J.H. to be dating an older man, especially because J.H. was eighteen years old
and leaving soon to attend college.  J.H.
agreed with her parents that she should end the relationship and told her
parents that she believed Malone would be angry.

          After J.H. changed her cell phone
number, she called Malone from her house phone to tell him she was ending the
relationship.  Malone came over to J.H.’s
house, uninvited, and told J.H. that he had a video of them having sex.  J.H. asked him to leave, and Malone started
yelling and “flipping out.”

          After he left the house, Malone called
J.H. and threatened to kill one or two of her friends.  During that conversation, Malone asked J.H.
to meet with him, go to his apartment, delete the sex video, and talk.  J.H testified that she agreed to meet with
Malone because she was scared he would hurt her friends.

          When J.H. and Malone went to his
apartment, they went to his bedroom, where he kept his computer, so they could
delete the video.  While J.H. was
deleting the video, she heard a noise behind her and turned around to see
Malone pointing a gun at her face.  Malone
waved the gun at her and told her to get on the bed because he wanted to have
sex.  J.H. testified at trial that:

          I
walked over to the bed, and then he started - - he started crying and he was,
like, why, you’re the one doing this to us, blah, blah, and he just started
rambling.  I was, like, look, put the gun
down and we’ll talk it out.  And he
managed to, like, put the gun down and I was going to, like, try to, like, move
it away, just a way from us, and just, like, when I went to go back, move away,
you know, he jumped down to go get it, that’s when I tried to maneuver myself
to the next bedroom where he then grabbed the gun and then followed me into the
next bedroom.

 

J.H.
testified that after she told Malone how scared she was of the gun, Malone threw
the gun out of a door and over a fence.

          When J.H. tried to leave, Malone took
her purse and keys.  Malone grabbed her,
picked her up, and pulled her back into his apartment.  J.H. testified that Malone said he wanted to
have sex with her, and when she refused, he said, “You think I only have one
gun?”  J.H. believed that Malone did have
another gun and could shoot her, so she “agreed” to have sex with him in
exchange for his promise to let her leave. 
After Malone had sex with J.H., he told her he wanted to talk.  J.H. testified that “he just said he had
three more guns so I’m thinking, no, I’m leaving, bye.”  Malone began sending text messages to J.H.
after she left, but she did not return Malone’s phone calls or messages.     At trial, J.H. testified that she had sex
with Malone so she could leave his apartment. 
Even after Malone threw the gun away, she believed he was still capable
of carrying through with his threats to kill her friends and shoot her.  On cross-examination, J.H. admitted that she
did not call the police and inform them about Malone’s threat to kill her
friends.

          S. Spjut, R.N., testified at trial
about the rape exam she conducted on J.H. on the day of the incident.  Spjut did not observe any trauma
from her initial head‑to‑toe exam, but did observe a bruise when
she conducted a genital exam.  On cross‑examination, Spjut
testified that the bruise she observed was not inconsistent with “sex that’s
not consensual.”

          M. Pierce, a DNA analyst for the
Harris County Medical Examiner’s Office, testified that swabs taken from J.H.
for a rape exam tested positive for semen.  Pierce said that she could not reach a
conclusion about the identity of the man who contributed the semen based upon
the DNA evidence.

          Malone testified at the guilt‑innocence
phase of trial.  He testified that he had
had intimate encounters with J.H. before the day of the incident, and J.H. had
lied to her parents about her whereabouts. 
Malone said that J.H. called him on the day of the incident and said
that her father was “going ballistic” about the relationship with Malone and
wanted her to break it off.

          Malone admitted there was a sex video
of him and J.H., but stated that J.H. had been aware he was taping them at the
time the video was made.  Malone claimed
that he had deleted the video two weeks before the incident.

          Malone also testified that on the day of
the alleged sexual assault, he told J.H. he needed to reconcile with his
wife.  At that point, J.H. told Malone
that she wanted to end their relationship. 
Malone testified that they then had consensual sex.  He denied either holding or owning a handgun,
threatening J.H. or her friends, forcing J.H. to have sex, or preventing her
from leaving.  After they had sex, Malone
testified that he and J.H. got into an argument over him reconciling with his
wife.

Analysis

Factual
sufficiency of the evidence

          In point of error one, Malone contends
the evidence is factually insufficient to establish that he committed
aggravated sexual assault because the evidence is too weak to prove that sexual
intercourse was “without the consent of the complainant.”  See Tex.
Penal Code Ann. §§ 22.011(b)(2), .021(c) (Vernon Supp. 2009) (sexual
assault is without consent of other person if actor compels other person to
submit or participate by threatening to use force or violence against other
person, and other person believes that actor has present ability to execute
threat).  When conducting a
factual-sufficiency review, we view all of the evidence in a neutral
light.  Cain v. State, 958 S.W.2d
404, 408 (Tex. Crim. App. 1997).  We will
set aside the verdict only if (1) the evidence is so weak that the verdict is
clearly wrong and manifestly unjust or (2) the verdict is against the great
weight and preponderance of the evidence. 
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  Under the first prong of Johnson, we
cannot conclude that a conviction is “clearly wrong” or “manifestly unjust”
simply because, on the quantum of evidence admitted, we would have voted to
acquit had we been on the jury.  Watson
v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).  Under the second prong of Johnson, we
cannot declare that a conflict in the evidence justifies a new trial simply
because we disagree with the jury’s resolution of that conflict.  Id. 
Before finding that evidence is factually insufficient to support a
verdict under the second prong of Johnson, we must be able to say, with
some objective basis in the record, that the great weight and preponderance of
the evidence contradicts the jury’s verdict. 
Id.  In conducting a
factual-sufficiency review, we must also discuss the evidence that, according
to the appellant, most undermines the jury’s verdict.  See Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

          Malone makes a
weakness-of-the-evidence claim under the first prong of Johnson.  He argues J.H. did
not testify that she had sex with him at the time he allegedly threatened her
with a gun.  Instead, Malone argues that 

          Even if
the jury believed that [Malone] threatened her with a gun, the gun was long
gone by the time they had sex.  [J.H.]
testified that she had sex with him so that she could leave, not because of
threats.  This is insufficient to prove
that when she did participate, it was because she was compelled to do so by
[Malone’s] threat to use force and violence against her, a threat she believed
he had the present ability to execute.

 

In
Malone’s view of the evidence, there was no nonconsensual sex because J.H. never
explicitly told him that she refused to have sex with him: “In spite of all of
[J.H.’s] answers to the prosecutor’s leading questions about threats, it was
clear from her testimony that she never refused to have sex with [Malone].  She acquiesced, albeit grudgingly, in order
to be able to leave.”  “She had sex with
[Malone] so that she could leave.  No
means no, but she never said those words, in any form.  She said, in effect, Oh, all right.” 

          We do not share Malone’s narrow view
of the evidence.  J.H. testified that
when she tried to leave Malone’s apartment, Malone grabbed her, picked her up,
and pulled her back into the apartment.  She
testified that when she refused to have sex with Malone, he said, “You think I
only have one gun?”  Finally, J.H.
testified she believed that Malone did have another gun and could shoot her.  Considering all the evidence, as we must, we
do not agree that the evidence is too weak to prove that sexual intercourse was
“without the consent of the complainant.”

We overrule point one.

 

 

Legal
sufficiency of the deadly weapon finding

          In point of error two, Malone claims
that the evidence is legally insufficient to support the deadly‑weapon
finding in the judgment.  In this point
of error, Malone is not challenging the element of the offense of aggravated
sexual assault that involves the use or exhibition of a deadly weapon in the
course of the same criminal episode.  See Tex.
Penal Code Ann. § 22.021(a)(2)(A)(iv) (Vernon Supp. 2009).  Malone has, in fact, already conceded a legal-sufficiency
argument directed at his conviction for aggravated sexual assault episode
(“Appellant does not have a realistic hope of succeeding in such a legal
insufficiency argument”).  Instead, he specifically
challenges the deadly-weapon finding in the judgment and asks this Court to
“modify the judgment to delete the finding for use of a deadly weapon.”

A special issue on the use and exhibition of a deadly weapon
was not submitted to the jury in either the guilt-innocence or punishment
phases.  Instead, the trial court entered
a deadly‑weapon finding based on the jury’s finding that Malone was
guilty of aggravated sexual assault as charged in the indictment because the
indictment charged that Malone “used and exhibited a deadly weapon.”  See
Polk v. State, 693 S.W.2d 391, 394
(Tex. Crim. App. 1985) (jury’s verdict on indictment is one of three ways to
make affirmative deadly‑weapon finding).

          Malone does not explain why the deadly-weapon
finding is error in light of his conviction. 
While a deadly‑weapon finding does affect a defendant’s eligibility
for probation and parole, it does not alter the range of punishment to which
the defendant is subject, or the number of years assessed.  See
Ex parte Huskins, 176 S.W.3d 818, 821
(Tex. Crim. App. 2005).  The jury
rejected Malone’s request for community supervision.  The deadly-weapon finding will not actually affect
eligibility for parole because his sentence for aggravated sexual assault has
the same effect as a deadly-weapon finding for purposes of parole.  See
Tex. Gov’t Code Ann. § 508.145(d)
(Vernon Supp. 2009) (parole eligibility is identical for inmate serving
sentence for (1) offense described by Code of Criminal Procedure art. 42.12, § 3g(a)(1)(E) (aggravated sexual
assault) and (2) offense for which judgment contains affirmative finding under
Code of Criminal Procedure art. 42.12, § 3g(a)(2) (deadly‑weapon
finding)); see also Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(1)(E),
(2) (Vernon Supp. 2009).

          Because the jury made an affirmative
deadly-weapon finding that Malone used or exhibited a firearm, the trial court
was required to enter that finding in the judgment.  See
Tex. Code Crim. Proc. Ann. art.
42.12, § 3g(a)(2) (Vernon Supp. 2009). 
Malone has previously conceded the legal sufficiency of the jury’s
verdict, and the only relief he requests under this point of error is that this
Court modify the trial court’s judgment to delete the deadly‑weapon
finding.  We hold that the trial court
committed no error in entering the deadly‑weapon finding.

We overrule point two.

Conclusion

          We
affirm the trial court’s judgment. 

 

 

 

 

                                                          Michael
Massengale

Justice

                                      

                                                                   

 

Panel
consists of Justices Keyes, Sharp, and Massengale.

Do
not publish.  Tex. R. App. P. 47.2(b).