**Ex parte Thomas Patrick EMPEY.**

**No. 70262.**

Court of Criminal Appeals of Texas,
En Banc.

Sept. 14, 1988.

Rehearing Denied Oct. 19, 1988.

Thomas Empey, pro se.

Tim Curry, Dist. Atty., and Betty Stanton, Asst. Dist. Atty., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CLINTON, Judge.

This is a post conviction application for habeas corpus pursuant to Article 11.07. V.A.C.C.P. The issue is propriety of a nunc pro tunc order purporting to "cor-

rect" a judgment previously entered in minutes of the convicting court.

Applicant was confined January 12, 1978, for an offense committed on or about January 6, 1978. Filed February 21, the indictment in case number 12468A in Criminal District Court No. 1 of Tarrant County contained two counts, towit: first, that appellant caused the death of a named individual "by shooting him with a firearm" while in the course of committing and attempting to commit robbery; second, that he caused the death of the same individual "by shooting him with a firearm."

February 23, on motion of the district attorney, the case was transferred to Criminal District Court No. 3, and on February 27 it was set for trial during the week of March 20. However, there is a March 28 docket entry made basically by a rubber stamped form with blanks then filled in, *viz:*

Arraignment *waived*

Waiver of jury filed. Defendant, after being warned, entered plea of Guilty before the Court. After hearing the evidence the Court found Defendant guilty and assessed his punishment at 50 years in the Texas Department of Corrections. Judgment.

Defendant in open Court Waived time for filing motion and requested sentence now.

Defendant sentenced to not less than 5 years nor more than 50 years in Texas Department of Corrections. Defendant to be credited with time spent in jail. That is last docket entry in the year 1978.[1]

Conformably to that memorandum of rendition of judgment and sentence, also on March 28 a formal judgment and sentence were prepared and entered in the minutes of the court.[2] See, e.g., *Westbrook v. State,* 753 S.W.2d 158 (Tex.Cr.App.1988).

By letter dated December 9, 1987 to the judge of Criminal District Court No. 3, S.O. Woods, TDC Director of Classifications and Records, related that applicant "is currently challenging his commitment status," and requested "your review and advice on his situation." He explained that after being admitted to custody of TDC applicant "has been committed as a flat calculated parole eligibility status inmate based on an affirmative finding of use of a deadly weapon during commission of his crime;" however, "[t]here are recent Court of Criminal Appeals rulings which lend credibility to the inmate challenge," but "this office hesitates to make any substantial change in [his] commitment status without input from the trial court." Therefore, he requested the court review status of applicant and advise "as to whether or not the inmate should or should not be committed as a flat calculated parole eligibility status inmate." Woods added, "There are substantial liberty interests at stake for the inmate in this matter *and of course liability issues for this Agency.*"[3]

As indicated in note 1, *ante,* the district attorney promptly reacted with a motion

---

1. The district attorney would later relate in his motion for entry of judgment nunc pro tunc, filed January 11, 1988, the following:

   On March 28, the State waived the capital murder count and Empey pleaded guilty to murder before the trial court. The trial court found Empey 'guilty as charged in the second count of the indictment' and, following the State's recommendation, sentenced him to fifty (50) years in the Texas Department of Corrections.

2. The judgment of even date is on another "fill in the blanks" form. It reflects, *inter alia,* that the offense is "Murder with a Firearm" committed "January 6, 1978;" that arraignment is "Waived," the plea is "Guilty" to "Count 2" and punishment is "Fifty (50) years, Texas Department of Corrections." In the printed portion is

a statement that the Court, having heard the evidence submitted and argument of counsel "is of the opinion and so finds that the said Defendant is guilty of the offense as confessed and set forth above."

The sentence of same date identifies the same offense, imposes a term of not less than 5 years nor more than 50 years and orders credit from January 12, 1978 to March 28, 1978. It also orders that "the said judgment be, and the same is hereby in all things approved and confirmed, and that Defendant, who has been adjudged guilty of the above named offense, as charged above ... be delivered by the Sheriff [et cetera]."

3. All emphasis is supplied by the writer of this opinion unless otherwise indicated.

for entry of judgment nunc pro tunc.[4] The same day and ex parte, the judge of the convicting court signed a "Nunc Pro Tunc Order Correcting Minutes of the Court." It recites that "it is being made known and considered by the Court, that the entry relating to Offense in the above styled and numbered cause should be amended and corrected," that "[it is now the considered opinion of the Court that the entry should be amended and corrected," and therefore it is ordered, adjudged and decreed that the entry be amended and corrected to read:

> Offense: Murder with a Firearm
>
> Affirmative Finding: The Court finds that the defendant in this cause ... used or exhibited a deadly weapon, to-wit: a firearm, during the commission of said offense of murder."

It also ordered the clerk of court to furnish officials at TDC a certified copy of the order. The record shows that was done.

Such was the posture of things when applicant swore to his application for writ of habeas corpus on March 8. It was filed by the clerk on March 21. As he had in his answer to the motion for entry of judgment nunc pro tunc, appellant asserted that he had entered his plea pursuant to a plea bargain agreement, *viz:*

> Applicant entered a plea of guilty in a plea bargain to the offense of murder in Cause No. 12468A.... The agreement was that in return the State would recommend a fifty (50) year sentence. *Such agreement did not include that the Court would enter an affirmative finding as to the use or exhibition of a deadly weapon during the commission of the offense.* The trial records fail to reflect that the trial court entered such an affirmative finding of the use or exhibition of deadly weapon during the commission of the offense in the guilty plea proceedings or into the judgment.

Application, at 2. He relies, *inter alia*, on *Ex parte Dopps*, 723 S.W.2d 669, at 670 (Tex.Cr.App.1986).

The State's reply does not address the existence of a plea bargain agreement or *Ex parte Dopps*, supra. Instead, it proceeds on the theory that because the trial court found applicant "guilty as charged in the second count of the indictment," and its alleged use of a firearm, a deadly weapon per se, "an affirmative finding of the use or exhibition of a deadly weapon arose as a matter of law;" thus the trial court was under a mandatory duty to enter that affirmative finding in the judgment, citing *Curry v. State*, 720 S.W.2d 261, 263 (Tex. App.—Austin 1986, pet. ref'd), in that failure to enter it at the time of judgment was "clerical error, not the product of judicial reasoning," *id.*, and, "clerical error" may be "corrected by later entry of a judgment nunc pro tunc. *Id.*"

The State prays that "the Court find that there are no controverted, previously unresolved facts material to the legality of the Applicant's confinement and enter findings recommending that relief be denied without a hearing." The judge of the convicting court prepared a memorandum finding "there is no necessity for a fact finding hearing because there is ample evidence in the record to rule on the relief sought," adopting as correct the allegations contained in the State's answer and recommending that relief be denied.

On June 15 we granted leave to file and ordered the application set for submission. See Tex.R.App.Pro.Rule 213. Just the week before this Court handed down its opinion in *Ex parte Poe*, 751 S.W.2d 873 (Tex.Cr.App.1988). It comes to mind that the first question to be answered is whether *Ex parte Poe* or *Ex parte Dopps*, supra, which *Poe* distinguishes, governs the issue presented in this cause.

The better starting point, however, is *Ex parte Brooks*, 722 S.W.2d 140 (Tex.Cr.App. 1986), for it is an interpretation of the seminal decision of this Court in *Polk v. State*, 693 S.W.2d 391 (Tex.Cr.App.1985).

---

**4.** The January 11, 1988 certificate of service states a copy was mailed to the attorney who had represented applicant ten years earlier, and to applicant at TDC. Applicant prepared an answer to the motion, and mailed it January 18;

it was filed January 25. By then the motion had been granted without a semblance of due process, called for by, e.g., *Ex parte Brown,* 477 S.W.2d 552, at 554 (Tex.Cr.App.1972).

In *Brooks* the jury found defendant guilty of causing the death of an individual "by shooting him with a gun;" the court assessed punishment, did not enter any affirmative finding in the judgment. *Id.,* at 141. Yet TDC was calculating his parole eligibility date on "flat only" because its record denoted his offense as "murder w/deadly wpn." *Id.,* at 141–142. The Court noticed that murder is not a listed offense. Then we reasoned from *Polk,* as follows:

> In *Polk,* supra, it was stated that an affirmative finding is the trier of fact's *express* determination that a deadly weapon was actually used or exhibited during the commission of the offense [emphasis in original]. Article 42.12, Sec. 3(f)(2) also requires, 'Upon affirmative finding that the defendant used or exhibited a deadly weapon during the commission of an offense [et cetera], the trial court shall enter the finding in the judgment of the court.' Such an affirmative finding is not a recitation of the offense in the judgment with the words 'deadly weapon', 'firearm used', or other similar phrases added to the offense for which a defendant is convicted. Nor is an affirmative finding made and *entered* when the judgment reflects the verdict of the jury and that verdict refers to a weapon.

*Id.,* at 142 (emphasis in original).

The Court recognized that a verdict may in certain circumstances "constitute an affirmative finding being made" under *Polk,* but said it is still necessary that an "affirmative finding ... be entered separately and specifically in the judgment of the court by the trial court[.]" If the trial court is the trier of fact at the punishment phase, we agreed that "then the affirma-

tive finding should be made and entered as prescribed by *Fann* [*v. State,* 702 S.W.2d 602 (Tex.Cr.App.1985) ]." *Ibid.*[5]

■ Given that the verdict of a jury may in certain circumstances constitute an affirmative finding being made, we hold that where a charging instrument alleges accused caused death by shooting an individual with a firearm and a trial judge is trier of fact, a recitation in the judgment that offense is "murder with a firearm" coupled with a finding that accused is "guilty of the offense as confessed and set forth above," approved and confirmed in the sentence, constitutes an affirmative finding *made* by the trial court.

That is not to say, however, in making such a finding the trial court has *entered* an affirmative finding in the judgment. As our recent decisions construing former article 42.12, § 3f(a)(2) (now § 3g(a)(2)) make clear, as well as findings made by the fact finder that defendant used or exhibited a deadly weapon, to comply with that statute the trial judge must enter in the judgment a separate and specific affirmative finding that a deadly weapon was used or exhibited and, if the deadly weapon was found to be a firearm, enter that finding also. *Poe v. State,* supra; *Ex parte Hughes,* 739 S.W.2d 869 (Tex.Cr.App.1987; *Ex parte Mendez,* 724 S.W.2d 77 (Tex.Cr.App.1987); *Ex parte Shaw,* 724 S.W.2d 75, (Tex.Cr.App.1987); *Ex parte Brooks,* supra.

■ So in the instant cause, while in its March 28, 1978 judgment the trial court *made* a finding that applicant used a firearm, during commission of the offense of murder, the judge did not *enter* a separate and distinct affirmative finding as required by the statute. Applicant says there is good reason: his plea bargain agreement

5. In *Fann,* supra, the Court also drew from *Polk,* at 394, the proposition that an affirmative finding may be made during the punishment phase if the trier of fact on punishment "is presented with and responds in the affirmative to a special issue regarding the defendant's use or exhibition of deadly weapon or firearm during the commission of the offense." Accordingly, the Court concluded:

> ... [W]e hold that where, as in the instant case, the trial judge is the trier of fact at the

punishment stage and he has heard evidence on the issue, he has the authority to make an affirmative finding as to the use or exhibition of a deadly weapon if the jury has not decided the matter. By including such an affirmative finding in the judgment, the court, in essence, responds to the special issue concerning the use or exhibition of a deadly weapon.

*Fann,* supra, at 604 (Opinion on Rehearing).

did not include that such a finding would be entered. He invokes *Ex parte Dopps*, 723 S.W.2d 669 (Tex.Cr.App.1986).

In *Ex Parte Dopps* we resolved a problem similar to the one applicant has, but their respective contexts are so substantially different that the former does not demand the same result here. On the undisputed premise that there was a plea bargaining agreement, minutely examining the *Dopps* record in order to determine his contention that entry of an affirmative finding in the judgment was "never contemplated" in the original plea proceeding, we found "no evidence that the parties ... contemplated an affirmative finding of a deadly weapon, or that the trial court *made such a finding at that time. Id.,* at 670. Here, however, we have found, *ante* at 774, that the trial court *made* an affirmative finding, but did not *enter* a separate and specific one in the judgment. As this Court discerned in *Ex parte Poe*, supra, "[T]he primary difference between *Dopps* and the situation before us is that a proper affirmative finding was made by the trier of fact in the applicant's case," there a jury. At 877.

We recognize and appreciate that applicant has stated under oath that there was a plea bargain and the plea bargain agreement "did not include that the Court would enter an affirmative finding," that the district attorney has not contested his sworn statements, asserting instead there are no previously unresolved material facts, and that the judge of the convicting court has not found otherwise. But the statute provides, "Matters alleged in the petition not admitted by the state are deemed denied."

6. "In his sworn habeas application applicant alleged, inter alia, that there was a plea bargain and that he entered his guilty plea to the lesser included offense of robbery upon the advice of his counsel that if his probation was ever revoked he would not have to serve one-third of his sentence before becoming eligible for parole. Attached to the habeas application is an affidavit of applicant's trial counsel *supporting the allegation."*

7. The writer adheres to general views expressed in his dissenting opinion in *Ex parte Poe*, supra, and in addition would point out that in *the* case upon which *Poe* relies, *Curry v. State,* 720 S.W.2d 261 (Tex.App.—Austin 1986), PDR refused, the affirmative finding was made by a

Article 11.07, § 2(b). And the burden of proving allegations which entitle him to relief is on applicant. *Ex parte Salinas,* 660 S.W.2d 97, at 101 (Tex.Cr.App.1983); *Ex parte Alexander,* 598 S.W.2d 308, at 309 (Tex.Cr.App.1980). Even sworn allegations are not alone sufficient proof. Compare *Ex parte Shaw*, supra, at 76, n 2; [6] *Ex parte Garcia,* 682 S.W.2d 581, at 582 (Tex. Cr.App.1985) (sworn allegations, supporting affidavit of trial counsel, comments by judge during admonishment, skimpy evidence of deadly weapon and failure of State make any effort to controvert sworn allegations sufficient to grant relief, striking affirmative finding); see also *Ex parte Stephenson,* 722 S.W.2d 426, at 428 (Tex. Cr.App.1987) (plea involuntary where facts show "implied agreement" by the parties to "waiver of the deadly weapon finding").

Accordingly, given the state of the record and holdings of *Ex parte Poe*, supra, we conclude applicant has failed to show he is entitled to relief.[7]

The relief sought is denied.

TEAGUE, Judge, dissenting.

What is going on in this old house that causes this Court to turn the law governing "nunc pro tunc" proceedings topsy-turvy, and the law of post-conviction writ of habeas corpus upside down, as well as to summarily deny applicant, who has pled an uncontroverted case, relief?

The majority opinion states: "So in the instant cause, while in its March 28, 1978 judgment the trial court *made* a finding that applicant used a firearm ...", and also states: "[G]iven state of the record and holdings of *Ex parte Poe*, supra, we con-

jury in response to a special issue submitted with the court's charge on punishment; later on motion the trial court convened a hearing and then found that the jury finding was omitted from the judgment "due to a clerical error." *Id.,* at 262. In that circumstance entry of an affirmative finding in the judgment is mandatory. But when trial is before the court on a plea of guilty pursuant to a plea bargain agreement that rules out entry of an affirmative finding, this Court has never held the judge of trial court nevertheless is mandated to enter it. Indeed, as the cases last cited and discussed above demonstrate, the Court has set aside and vacated just such entries in the judgment.

clude applicant has failed to show he is entitled to relief." I have read and re-read footnote 2 in the majority opinion, as well as the original judgment and sentence, but have yet to find anywhere therein where the trial judge who presided over applicant's trial ever *made* an "affirmative finding by the use or exhibition of a deadly weapon". Thus, I do not understand how the majority opinion can make the first statement. Given the facts of *Ex parte Poe*, 751 S.W.2d 873 (Tex.Cr.App.1988), and the uncontradicted and undisputed facts of this cause, I find that the facts of *Ex parte Poe*, supra, are about as close to this case as Reykjavik, Iceland is to Austin, Texas. Thus, the majority's second statement is clearly erroneous.

No hearing has yet been held in this cause. I was under the impression that this Court never ordered a hearing in this cause because it was believed by all that this was one of those "slam-dunk" writ cases in which the applicant had to be summarily granted relief by this Court, as a matter of law. By the majority opinion, I now find that I was mistaken: It is the applicant who is supposed to get summarily "slam-dunked" by this Court, as a matter of law, in Huntsville if not Reykjavik.

At a minimum, given what the applicant asserts, which is not challenged or contradicted by the State, this applicant is clearly entitled to at least a hearing on his post-conviction application for writ of habeas corpus. If it is the will of this Court to hold as it obviously does, see page 8 of the slip opinion, that when an inmate files an application for the post-conviction writ of habeas corpus and pleads a prima facie case, and even though the State does not dispute or contradict his allegations, he not only gets no hearing on his application, but because he cannot prove what he alleges, because he can only do that through a formal hearing, which is not allowed by today's decision, his application must be summarily denied by this Court, so be it. However, this holding will, of course, cut down on the number of this Court's post-conviction writ cases, if not outright cause this Court in the future not to have to consider any post-conviction writ cases, notwithstanding why Art. 11.07, V.A.C.C.P., was enacted by the Legislature. See *Ex parte Renier*, 734 S.W.2d 349 (Tex. Cr.App.1987) (Teague, J., dissenting opinion). Perhaps however, notwithstanding what this Court does today to post-conviction writ practice, Texas' inmates will find an understanding United States District Court Judge, who will entertain and decide the merits of their post-conviction writs of habeas corpus.

The uncontradicted factual allegations that applicant makes in his application, as well as the original records of the trial court, show that applicant was originally charged by an indictment that alleged capital murder and murder. Applicant asserts under oath, which assertion is not challenged by the State, and which the record supports, that pursuant to a plea bargain agreement between him and his attorney, Hon. Jeffrey Kearney, and the prosecuting attorney, Hon. Tim Curry, it was agreed that in exchange for a plea of guilty from applicant, Curry would motion, and Hon. Charles W. Lindsey, the trial judge who presided over applicant's trial, who is not the present trial judge, would grant the motion and permit the State to prosecute the applicant only on the murder count of the indictment, which is what Curry and Judge Lindsey did. As a further part of the plea bargain agreement, Curry agreed to recommend to Judge Lindsey that applicant's punishment should be assessed at 50 years' confinement in the Department of Corrections, which recommendation was made by Curry and accepted by Judge Lindsey. Another part of the plea bargain agreement was that an affirmative finding as to the use or exhibition of a deadly weapon would *not* be entered by Judge Lindsey in his judgment of conviction. And all of the above occurred, as reflected by the first judgment that was entered in this cause. See footnote 2 of the majority opinion. Everybody, including applicant, apparently was then happy, and apparently, after the clerk stamped the docket sheet with his preprinted rubber stamp, and filled in the necessary blanks, and also

filled in his preprinted judgment and sentence form, reflecting what had happened in applicant's cause, everybody then went to their respective homes, or elsewhere, obviously believing and congratulating themselves that justice had been done in the case.

Everything was apparently rocking along pretty good for applicant until December, 1987, when out of the blue, and sua sponte, almost 11 years later, an official of the Department of Corrections wrote Judge Lindsey a letter, asking him to "clarify" the situation about whether or not he had entered in the applicant's judgment of conviction, or intended to enter in the judgment an affirmative finding that a deadly weapon had been used or exhibited during the commission of the offense by the applicant. Given the fact that Judge Lindsey was no longer the presiding judge of the trial court, I assume that the judge who signed the "Nunc Pro Tunc Order Correcting Minutes of the Court", whose signature I cannot make out, accepted the letter and referred it to the District Attorney's Office. Another trial judge, Hon. Jack Gray, thereafter signed the order denying applicant a hearing and finding that "the allegations contained in the State's answer are correct and recommends the relief requested be denied."

It is apparent to me that when the letter addressed to Judge Lindsey was referred to the District Attorney of Tarrant County, he, the District Attorney, turned it over to one of his assistants to handle, after which the assistant thought about the problem for awhile and then concluded that what he had remembered from law school about nunc pro tunc law would take care of the problem, and then proceeded to draw up a "Nunc Pro Tunc Order Correcting Minutes of the Court", which contained an affirmative finding that applicant had used or exhibited a deadly weapon during the commission of the offense, and thereafter had it approved and entered of record. A copy of same was then sent the Department of Corrections.

Although this "ex parte nunc pro tunc proceedings" probably satisfied the official of the Department and the Department, it, however, for obvious reasons, and understandably, did not set too well with applicant, which I can understand why, if he did, he bitched louder than a stuck pig might holler. Of course, when he gets a copy of the majority opinion, I suspect that the members of this Court will be able to hear his screams all the way from wherever he might then be located or situated, unless he has in the meantime been transferred to Reykjavik, Iceland and is now located in a padded cell which causes his screams not to be heard even from that far away place.

Given the uncontradicted facts that applicant has pled, he is clearly entitled at least to a hearing, if not out right relief. To the way that the majority opinion mistreats and "slam-dunks" applicant's petition, without according him a semblance of due course or due process of law, I respectfully say "Shame on you", and dissent to such action.