**AFFIRM; Opinion Filed January 8, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00016-CR

### VERA ELIZABETH GUTHRIE-NAIL, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-80635-2012**

## MEMORANDUM OPINION

Before Justices FitzGerald, Francis, and Myers
Opinion by Justice Myers

Appellant Vera Elizabeth Guthrie-Nail pleaded guilty to conspiracy to commit capital murder and was sentenced to fifty years in the Institutional Division of the Texas Department of Criminal Justice. The trial court subsequently signed a judgment nunc pro tunc finding appellant used a deadly weapon during the commission of the offense. In three issues, appellant argues the trial court erred by signing the judgment nunc pro tunc and that appellant was denied due process of law. We affirm.

### BACKGROUND AND PROCEDURAL HISTORY

On September 12, 2012, appellant pleaded guilty to conspiracy to commit capital murder for the death of her husband, Craig Nail. The original judgment, signed on September 24, 2012, recited "N/A" in the space provided for "Findings on Deadly Weapon." On December 4, 2012,

the trial court signed a judgment nunc pro tunc. This judgment listed the "Findings on Deadly Weapon" as "YES, A FIREARM," and included a special finding that appellant:

> used or exhibited a deadly weapon, namely, a firearm, during the commission of a felony offense or during immediate flight therefrom or was a party to the offense and knew that a deadly weapon would be used or exhibited. TEX. CODE CRIM. PROC. art. 42.12 § 3g.

Appellant filed a motion to set aside the judgment nunc pro tunc, which the trial court did not rule on, followed by a notice of appeal.

## DISCUSSION

### A. NUNC PRO TUNC

In her first and second issues, appellant contends the trial court erred by signing the judgment nunc pro tunc that added the affirmative deadly weapon finding—nearly three months after it signed the original judgment—because the court's omission of the deadly weapon finding in the original judgment was a judicial decision rather than a clerical error. The State responds that the trial court properly entered the judgment nunc pro tunc because, by convicting appellant of the offense as alleged in the indictment, which, in turn, alleged the use of a deadly weapon per se, the trial court necessarily determined that appellant used a deadly weapon during the offense. Moreover, nothing in the plea agreement, the plea hearing, or the trial court's docket entry contradicts this implied finding.

### *Judgments Nunc Pro Tunc*

The purpose of a nunc pro tunc order is to correctly reflect in the records of the trial court the judgment it actually made but which, for some reason, did not enter of record at the proper time. *Smith v. State*, 15 S.W.3d 294, 298 (Tex. App.—Dallas 2000, no pet.). Use of a nunc pro tunc order permits the court "to correct now what the [judgment] reflects had already occurred at a time in the past." *Id*. Before a judgment nunc pro tunc can be entered, however, there must be proof the proposed judgment was actually rendered or pronounced at an earlier time. *Id*. at 299

(citing *Jones v. State*, 795 S.W.2d 199, 201 (Tex. Crim. App. 1990)).

A judgment nunc pro tunc is improper if it has the effect of making a new or independent order. *Smith*, 15 S.W.3d at 299; *see also Ex parte Dickerson*, 702 S.W.2d 657, 658 (Tex. Crim. App. 1986). A correction can be made to reflect what actually happened at trial by entry of a nunc pro tunc judgment, "but correction can be only as to what was done and not as to what should have been done." *Ex parte Dopps*, 723 S.W.2d at 671 (citing *Chaney v. State*, 494 S.W.2d 813, 814 n.1 (Tex. Crim. App. 1973)). In addition, judgments nunc pro tunc may correct only clerical errors in a judgment, not judicial omissions or errors. *Blanton v. State*, 369 S.W.3d 894, 898 (Tex. Crim. App. 2012). A clerical error is one that does not result from judicial reasoning or determination. *Smith*, 15 S.W.3d at 299 (citing *State v. Bates*, 889 S.W.2d 306, 309 (Tex. Crim. App. 1994)); *see also Collins v. State*, 240 S.W.3d 925, 928 (Tex. Crim. App. 2007). The "correction process" only involves a process to insure that the record truthfully reflects what actually occurred, not a readjudication or reopening of a controversy. *Smith*, 15 S.W.3d at 299.

A judgment nunc pro tunc can be entered any time, even after the trial court has lost jurisdiction over the case. *Bates*, 889 S.W.2d at 309. The determination of whether an error is clerical or judicial is a matter of law, and a trial court's finding or conclusion in this regard is not binding on the appellate court. *Fanniel v. State*, 73 S.W.3d 557, 559 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *Alvarez v. State*, 605 S.W.2d 615, 617 (Tex. Crim. App. [Panel Op.] 1980)).

### *Deadly Weapon Findings*

An affirmative finding of the use or exhibition of a deadly weapon may be made:

> when it is shown that a deadly weapon . . . was used or exhibited during the commission of a felony offense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited. On an affirmative finding under this subdivision, the trial court shall enter the finding in the judgment of the court.

TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2); *Lafleur v. State*, 106 S.W.3d 91, 94–95 (Tex. Crim. App. 2003); *Polk v. State*, 693 S.W.2d 391, 393 & n.1 (Tex. Crim. App. 1985). Article 42.12 envisions two steps. First, the jury or trial court as trier of fact makes an express, affirmative finding of fact that the defendant used or exhibited a deadly weapon in the course of committing the offense charged or in immediate flight from the commission of the offense. *Polk*, 693 S.W.2d at 393 & n.1. The term "affirmative finding" in article 42.12 means an "express determination" by the finder of fact that a deadly weapon was used or exhibited in the commission of the offense or in immediate flight therefrom. *Id*. Second, when that affirmative finding is made by the trier of fact, the trial court must enter a separate and specific deadly weapon finding in the judgment. *Id*. at 394.

When the jury makes an affirmative deadly weapon finding, the trial court has a mandatory duty to enter a deadly weapon finding in the written judgment. *See Ex parte Poe*, 751 S.W.2d 873, 876 (Tex. Crim. App. 1988). A failure by the trial court to comply with this mandatory duty is a clerical error that can be corrected by a judgment nunc pro tunc. *See id*. at 875–77. When the trial court is the finder of fact, it has authority to make an affirmative deadly weapon finding upon proper proof as well as to enter it in the judgment. *Hooks v. State*, 860 S.W.2d 110, 111 (Tex. Crim. App. 1993); *Ex parte Franklin*, 757 S.W.2d 778, 780 (Tex. Crim. App. 1988). But no separate, express finding of a deadly weapon is required by the trial court in certain instances, such as where the defendant pleaded guilty to an indictment that alleges the use of a deadly weapon. *See Lafleur*, 106 S.W.3d at 95 & n.23 (trier of fact's finding that defendant is "guilty as alleged in the indictment" will support deadly weapon finding if indictment contains language expressly alleging defendant used a deadly weapon); *Ex parte Empey*, 757 S.W.2d 771, 774 (Tex. Crim. App. 1988) (affirmative deadly weapon finding arose as matter of law when indictment charged defendant with use of deadly weapon and judge found defendant guilty as

alleged in indictment); *Marshall v. State*, 860 S.W.2d 142, 143 (Tex. App.—Dallas 1993, no pet.) (no express finding required when, by properly admonishing defendant and accepting his plea of guilty "to indictment" that charged use of a deadly weapon, trial court necessarily found defendant used a deadly weapon); *see also Johnson v. State*, 233 S.W.3d 420, 424 (Tex. App.—Fort Worth 2007, pet. ref'd).

In a more recent court of criminal appeals case, *Ex parte Huskins,* 176 S.W.3d 818 (Tex. Crim. App. 2005), Huskins was indicted for deadly conduct and the indictment alleged that a firearm—a deadly weapon per se—was used in the commission of the offense. *Id*. at 819-20.[1] When Huskins pleaded guilty to deadly conduct before being placed on deferred adjudication, "he confessed that (1) he was the same person named in the indictment, and (2) that he committed the offense charged in the indictment." *Id*. The trial court subsequently adjudicated Huskins guilty and sentenced him to eight years in prison. *Id*. at 819. No mention of a deadly weapon finding was made in open court, but the trial court included a deadly weapon finding in the written judgment. *See id*. The court of criminal appeals noted that "[b]y properly admonishing [Huskins] and then accepting his guilty plea to the indictment, the trial court necessarily determined that [Huskins] used a deadly weapon in the commission of the offense." *Id*. at 820. Consequently, the trial court was not required to orally announce a deadly weapon finding at sentencing in order to include such a finding in the judgment:

> While a deadly-weapon finding does affect a defendant's eligibility for probation and parole, it does not alter the range of punishment to which the defendant is subject, or the number of years assessed. A deadly-weapon finding may affect how the sentence is served, but it is not part of the sentence. *Thus, a trial court is not required to orally announce a deadly-weapon finding at sentencing if the allegation of use of a deadly weapon is clear from the face of the indictment*.

*Id.* at 821 (footnotes and citations omitted) (emphasis added); *but see Loud v. State*, 329 S.W.3d

---

[1] The indictment stated that the applicant "did then and there knowingly discharge a firearm at and in the direction of a vehicle, and [he] was then and there reckless as to whether the vehicle was occupied." *Id*. at 820.

230, 234 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (distinguishing *Huskins* by noting that trial court did not properly admonish defendant regarding a deadly weapon, admonishing defendant that he was pleading no contest to and being placed on deferred adjudication for aggravated assault, serious bodily injury, rather than the offense alleged in the indictment, aggravated assault with a deadly weapon); *Johnson*, 233 S.W.3d at 427 (defendant pleaded guilty to "attempted capital murder" and trial court did not find the defendant guilty of the offense "as alleged" or "as charged" in the indictment).

### *Analysis*

The question in this case is whether the trial court erred by signing the judgment nunc pro tunc that added a deadly weapon finding to the judgment after previously signing the judgment that listed "N/A" in the space provided for "Findings on Deadly Weapon." Based on the above authorities, the trial court's judgment nunc pro tunc was proper as to the deadly weapon finding if the court found, by accepting appellant's plea to the offense as set forth in the indictment and finding appellant guilty of the offense as set forth in the indictment, that appellant used a deadly weapon during the offense.

Appellant was indicted for the offense of conspiracy to commit capital murder. *See* TEX. PENAL CODE ANN. §§ 7.02(b), 19.02(b)(1), 19.03(a)(2). Count II of the indictment alleged that appellant did:

> with intent that capital murder, a felony, be committed, agree with Mark Lyle Bell and Thomas Edward Grace, that they or one of them would engage in conduct that would constitute the offense, to wit: enter the habitation of Craig Nail and cause the death of Craig Nail, and Mark Lyle Bell performed an overt act in pursuance of the agreement, to wit: entered the habitation of Craig Nail and *shot Craig Nail with a firearm causing his death* . . . [emphasis added].

A firearm is a deadly weapon per se. *See id.* § 1.07(a)(17)(A); *Huskins*, 176 S.W.3d at 820. The court of criminal appeals has stated that if, as in this case, an indictment alleges the defendant used a particular weapon to "cause the death" of an individual, it necessarily alleges

–6–

that the defendant used a deadly weapon. *See Blount v. State*, 257 S.W.3d 712, 714 (Tex. Crim. App. 2008) ("'It is apparent that any allegation which avers a death *was caused* by a named weapon or instrument *necessarily includes* an allegation that the named weapon or instrument was, 'in the manner of its use . . . capable of causing' (since it *did* cause) death. Thus, applicant had sufficient notice that the weapon alleged is a deadly weapon and that her use of a deadly weapon would be an issue in the State's murder prosecution.'") (quoting *Ex parte Beck*, 769 S.W.2d 525, 526–27 (Tex. Crim. App. 1989) (emphasis in original)).

Additionally, the plea agreement stated that appellant was pleading guilty to conspiracy to commit capital murder as charged in Count II of the charging instrument. Appellant judicially confessed and admitted "to committing the offense of Conspiracy to Commit Capital Murder exactly as charged in the charging instrument or as a lesser included offense of the offense charged in (Count II of) the charging instrument." When appellant was admonished by the trial court, she answered affirmatively that she was pleading guilty "to the charge of conspiracy to commit capital murder as set forth in Count II of this indictment," and that she committed "this crime just as it's set forth in Count II of this indictment." The trial court found her "guilty of the first degree felony offense of conspiracy to commit capital murder just as set forth in the indictment in this matter." By accepting appellant's plea to the offense as set forth in the indictment, which alleged the use of deadly weapon per se, and then finding appellant guilty of the offense as set forth in that indictment, the trial court necessarily determined that appellant used a deadly weapon during the offense. *See, e.g., Huskins*, 176 S.W.3d at 820–21.

The State also directs our attention to the following docket sheet entry regarding the above case[2] from September 12, 2012, the date of the plea hearing:

**Sentence** (Judicial Officer: Rusch, Mark)

---

[2] The docket sheet is from the 401st District Court and bears the trial court cause number for the instant case.

> 2. Conspiracy to COMMIT CAPITAL MURDER BY TERROR THREAT /OTHER FELONY (Conspired)
> DC – Texas Dept of Criminal Justice – Prison
> Confinement to Commence 09/12/2012
> 50 years, TDC, Department of Corrections
> *Deadly Weapon Finding* 42.12 [emphasis added]

We recognize that appellate courts are habitually skeptical of docket sheet notations. *See State v. Shaw*, 4 S.W.3d 875, 878 (Tex. App.—Dallas 1999, no pet.); *see also Kerr v. State*, 83 S.W.3d 832, 833 (Tex. App.—Texarkana 2002, no pet.); *Pifer v. State*, 893 S.W.2d 109, 111 (Tex. App. —Houston [1st Dist.] 1995, pet. ref'd). A docket sheet entry alone is insufficient to constitute a judgment or decree of the court. *Bailey-Mason v. Mason*, 122 S.W.3d 894, 897 (Tex. App.— Dallas 2004, pet. denied). Although the trial court's docket sheet entry cannot substitute for a written order, it further supports the State's contention that the trial court found that appellant used a deadly weapon during the offense. *See Stokes v. State*, 277 S.W.3d 20, 24 (Tex. Crim. App. 2009) (finding trial court's docket sheet to be reliable indicator of trial court's decisions and business of the court).

Based, therefore, on (1) the allegation of the use of a deadly weapon per se in the indictment, (2) appellant's pleading guilty to the offense "as set forth in Count II of this indictment," and (3) the trial court finding appellant guilty "as set forth in the indictment in this matter," we conclude the trial court found that appellant used a deadly weapon during the offense. Accordingly, no error has been shown in the trial court's rendition of a judgment nunc pro tunc reflecting a conviction for conspiracy to commit capital murder and entry of a deadly weapon finding. We overrule appellant's first and second issues.

### B. NOTICE OF INTENT TO SEEK DEADLY WEAPON FINDING

In her third issue, appellant contends she was denied due process of law when the trial court entered the deadly weapon finding because the State did not provide notice it intended to seek such a finding.

The State must provide notice it intends to seek a deadly weapon finding. *Huskins*, 176 S.W.3d at 820; *Narron v. State*, 835 S.W.2d 642, 643 (Tex. Crim. App. 1992). The language in the indictment may provide sufficient notice if it expressly alleges the use of a deadly weapon. *See Huskins*, 176 S.W.3d at 820–21; *see also Lafleur*, 106 S.W.3d at 95 & n.23. In the instant case, as we have already discussed, the State provided notice it intended to seek a deadly weapon finding via the indictment, which alleged that Craig Nail was shot "with a firearm causing his death." By alleging the use of a firearm to cause Craig Nail's death, the indictment provided sufficient notice that the State would seek a deadly weapon finding. *See Blount*, 257 S.W.3d at 714; *Lafleur*, 106 S.W.3d at 95. Appellant's third issue is overruled.

We affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
130016F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

VERA ELIZABETH GUTHRIE-NAIL,
Appellant

No. 05-13-00016-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial District
Court, Collin County, Texas
Trial Court Cause No. 401-80635-2012.
Opinion delivered by Justice Myers.
Justices O'Neill and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 8th day of January, 2014.

/Lana Myers/
LANA MYERS
JUSTICE

–10–