

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

## NO. PD-0125-14

---

### VERA ELIZABETH GUTHRIE-NAIL, Appellant

### v.

### THE STATE OF TEXAS

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### COLLIN COUNTY

---

KELLER, P.J., delivered the opinion of the Court in which JOHNSON, ALCALA, RICHARDSON, and NEWELL, JJ., joined. RICHARDSON, J., filed a concurring opinion in which JOHNSON and NEWELL, JJ., joined. MEYERS, filed a dissenting opinion. KEASLER, J., filed a dissenting opinion in which HERVEY and YEARY, JJ., joined. YEARY, J., filed a dissenting opinion in which KEASLER and HERVEY, JJ., joined.

One of appellant's allegations is that she was entitled to notice and a hearing prior to the trial court issuing its *nunc pro tunc* judgment. It is beyond dispute that she had such a right[1] and that this right was violated. The State argues, however, that a remand to the trial court would be a useless

---

[1] *See Shaw v. State*, 539 S.W.2d 887, 890 (Tex. Crim. App. 1976) ("Before any unfavorable nunc pro tunc orders are entered the person convicted should be given an opportunity to be present for the hearing, represented by counsel, in order to accord him due process of law.").

task because the record indisputably shows that the *nunc pro tunc* judgment properly issued and the law does not require a court to perform a useless task.[2] We conclude that a remand is necessary because the State's entitlement to a *nunc pro tunc* judgment depends on at least one issue of fact—whether, at the time of trial, the trial judge actually made a deadly-weapon finding—and this issue of fact has not been conclusively resolved in the State's favor.

## I. BACKGROUND

### A. Trial Court

Appellant was indicted for capital murder and conspiracy to commit capital murder. After a few days of trial testimony, the parties reached an agreement: The State waived the capital-murder charge in exchange for appellant pleading guilty to the conspiracy charge for a fifty-year prison sentence. The conspiracy count of the indictment alleged that appellant,

> with intent that capital murder, a felony, be committed, agree[d] with Mark Lyle Bell and Thomas Edward Grace, that they or one of them would engage in conduct that would constitute the offense, to wit: enter the habitation of Craig Nail and cause the death of Craig Nail, and Mark Lyle Bell performed an overt act in pursuance of the agreement, to wit: entered the habitation of Craig Nail and shot Craig Nail with a firearm causing his death.[3]

---

[2] *See Blanton v. State*, 369 S.W.3d 894, 900 (Tex. Crim. App. 2012).

[3] In his dissent, Judge Meyers contends that the trial court had no authority to enter a deadly-weapon finding because no evidence showed that appellant personally exhibited a deadly weapon and the offense of conspiracy does not require that a deadly weapon be exhibited. However, a deadly-weapon finding may be entered, not only if a defendant used or exhibited a deadly weapon personally, but also if the defendant was a party to the offense and knew that a deadly weapon would be used or exhibited. TEX. CODE CRIM. PROC. art. 42.12 § 3g(a)(2). Because the conspiracy indictment alleged the overt act of shooting the victim "with a firearm causing his death" and also alleged that the conspirators intended to commit capital murder, the indictment would support a finding that a deadly weapon was used—and that appellant knew that a deadly weapon would be used—in the course of the conspiracy offense. Judge Meyers also contends that a deadly-weapon finding cannot be entered for the inchoate crime of conspiracy. But we have held that "all felonies are theoretically susceptible to an affirmative finding on the use or exhibition of a deadly weapon"

In her written judicial confession, appellant "admit[ted] to committing the offense of Conspiracy to Commit Capital Murder exactly as charged . . . in Count II of the charging instrument." The trial judge questioned appellant at length about the voluntariness of her plea and the rights she was giving up, and he orally found her guilty of the offense "just as set forth in the indictment in this matter." However, the trial judge did not orally refer to a deadly-weapon finding, nor do the plea papers make any mention of a deadly-weapon finding. The original judgment reflected "N/A" in the space provided for "Findings on Deadly Weapon." The record also contains what appears to be a computer printout of docket sheet entries in connection with appellant's case that includes an entry notation of "Deadly Weapon Finding 42.12."

More than two months after the original judgment was entered, the trial judge signed a judgment *nunc pro tunc*, changing the "Findings on Deadly Weapon" entry from "N/A" to "Yes, a Firearm." The judgment *nunc pro tunc* also added a special finding that appellant "used or exhibited a deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited." The effect of this finding is that appellant will not be eligible for parole until she has served at least twenty-five years of her sentence.[4]

**B. Appeal**

---

and have upheld a deadly-weapon finding for the inchoate offense of solicitation. *Whatley v. State*, 946 S.W.2d 73, 76 (Tex. Crim. App. 1997). We see no reason to categorically exclude the offense of conspiracy from offenses to which a deadly-weapon finding may attach. *See id.* ("We see no reason to exclude the offense of solicitation from felonies susceptible to a deadly weapon finding.").

[4] TEX. GOV'T CODE § 508.145(d)(1) ("An inmate serving a sentence for . . . an offense for which the judgment contains an affirmative finding under [TEX. CODE CRIM. PROC. art. 42.12] Section 3g(a)(2) . . . is not eligible for release on parole until the inmate's actual calendar time served, without consideration of good conduct time, equals one-half of the sentence or 30 calendar years, whichever is less.").

Appellant argued on appeal that the trial judge erred in entering the judgment *nunc pro tunc* for the following reasons: (1) the judgment corrected a judicial error rather than a clerical one; (2) there was no record support to conclude that appellant personally used or exhibited a deadly weapon; and (3) appellant's right to due process was violated because, "almost three months later," the trial judge "add[ed] a deadly-weapon finding without notice to appellant." In the body of the brief on the third claim, appellant argued both that the "State failed to give appellant notice in the indictment that it intended to seek a deadly-weapon finding" and that "appellant was not given notice that the trial court changed the original judgment to add an affirmative deadly-weapon finding."

The court of appeals concluded that the judgment *nunc pro tunc* was correctly entered because the indictment alleged the use of a deadly weapon, because appellant pled guilty to and judicially confessed her guilt to the conspiracy offense as set forth in Count II of the indictment, and because the trial judge orally found appellant guilty "as set forth in the indictment in this matter."[5] In addition, the court of appeals found that the docket entry referring to a deadly-weapon finding provided further support for the State's contention that the trial judge found that appellant used a deadly weapon during the offense.[6] Finally, the court of appeals construed appellant's notice complaint to be a complaint that the State failed to provide notice of its intent to seek a deadly-weapon finding.[7] The court of appeals concluded that the State had provided sufficient notice.[8]

---

[5] *Guthrie-Nail v. State*, No. 05-13-00016-CR, 2014 Tex. App. LEXIS 206, *10-*12 (Tex. App.–Dallas January 8, 2014) (not designated for publication).

[6] *Id.* at *12-13.

[7] *Id.* at *14.

[8] *Id.*

## II. ANALYSIS

An affirmative deadly-weapon finding must be an "express" determination in order to be effective.[9] Although affirmatively answering a deadly-weapon special issue (jury)[10] or explicitly saying that a deadly-weapon finding is being made (judge) satisfies the express-determination requirement, this Court has concluded that certain less explicit language also constitutes an express determination.[11] This includes express words, in a verdict or judgment, that refer to a portion of the charging instrument that includes a deadly-weapon allegation.[12] Moreover, in a bench trial, a trial judge need not include a deadly-weapon finding in the oral pronouncement of judgment; if the charging instrument alleged a deadly weapon, the finding may be included for the first time in a written judgment.[13]

The question arises whether the trial judge in a bench trial has the discretion to decline to make a deadly-weapon finding, even when the use of a deadly weapon is a necessary element of the

---

[9] *Ex parte Empey*, 757 S.W.2d 771, 774 (Tex. Crim. App. 1988) (quoting *Ex parte Brooks*, 722 S.W.2d 140, 142 (Tex. Crim. App. 1986)).

[10] *See Polk v. State*, 693 S.W.2d 391, 394 (Tex. Crim. App. 1985).

[11] *See Empey*, 757 S.W.2d at 774 ("Given that the verdict of a jury may in certain circumstances constitute an affirmative finding being made, we hold that where a charging instrument alleges accused caused death by shooting an individual with a firearm and a trial judge is trier of fact, a recitation in the judgment that offense is "murder with a firearm" coupled with a finding that accused is "guilty of the offense as confessed and set forth above," approved and confirmed in the sentence, constitutes an affirmative finding made by the trial court."); *Polk*, 693 S.W.2d at 394 ("Thus, if the indictment by allegation specifically places the issue before the trier of fact (i.e. '. . . . by stabbing him with a knife, a deadly weapon . . . .'), then an affirmative finding is de facto made when the defendant is found guilty "as charged in the indictment.").

[12] *See* authorities in previous footnote.

[13] *Ex parte Huskins*, 176 S.W.3d 818, 821 (Tex. Crim. App. 2005).

charged offense. We conclude that, in *Hooks v. State*,[14] we answered that question "yes" by necessary implication. In *Hooks*, the indictment specified that the defendant committed the offense of aggravated assault with "a deadly weapon, to wit: a firearm."[15] In a bench trial, the trial judge found the defendant guilty and placed her on probation.[16] The judgment specified that the defendant was found "guilty of the felony offense of aggravated assault, a third degree felony as charged in the indictment. DW."[17] Although the judgment did not separately and explicitly enter a deadly-weapon finding, the court of appeals held that, under the circumstances, "the trial court effectively made a de facto affirmative finding."[18] And because the probation statute does not permit the imposition of probation in a bench trial if a deadly-weapon finding is made, the court of appeals concluded that the judgment imposing probation was void.[19]

We reversed, holding that, because the trial judge did not *enter* a deadly-weapon finding, the probation statute "will not operate as a bar to probation under the facts of [the defendant's] cause."[20] While the Court's opinion focused on the entry, rather than the making, of a deadly-weapon finding, the Court could not have arrived at its result if the trial judge did not in fact have discretion to decline to make a deadly-weapon finding after finding the defendant guilty as charged. If the trial

---

[14]  860 S.W.2d 110 (Tex. Crim. App. 1993).

[15]  *See Hooks v. State*, 838 S.W.2d 643, 645 (Tex. App.–Dallas 1992), *rev'd*, 860 S.W.2d 110 (1993).

[16]  *Hooks*, 860 S.W.2d at 111.

[17]  *Id.* at 114.

[18]  *Hooks*, 838 S.W.2d at 645.

[19]  *Id.* at 644-45.

[20]  *Hooks*, 860 S.W.2d at 113-14.

judge in *Hooks* necessarily made a deadly-weapon finding when it found the defendant guilty as charged in the indictment for an offense that contained a deadly-weapon element, then he was required to enter that finding in the judgment.[21] A year before *Hooks*, we held that "an appellate court has authority to reform a judgment to include an affirmative finding to make the record speak the truth when the matter has been called to its attention by any source."[22] So, if the trial judge had necessarily made a deadly-weapon finding in *Hooks*, the court of appeals would have had the authority to make the record speak the truth by reforming the judgment to add the deadly-weapon finding. But such reformation would have resulted in an illegal judgment, leaving a remand for further proceedings as the only available option.[23]

In his dissent in *Hooks*, Judge Baird argued that the trial judge indeed had necessarily made a deadly-weapon finding, and that, as a result, he was required to enter that finding, having no discretion to do otherwise.[24] Judge Baird concluded that, "[u]nder the majority's holding, the entry

---

[21] *See Empey*, 757 S.W.2d at 774-75 (Denying relief from a *nunc pro tunc* order adding a deadly-weapon finding: "So in the instant cause, while in its March 28, 1978 judgment the trial court made a finding that applicant used a firearm, during commission of the offense of murder, the judge did not enter a separate and distinct affirmative finding *as required by the statute.*") (emphasis added).

[22] *French*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992).

[23] It is for this reason that we must disagree with Judge Yeary's contention that "nobody tried to reform the judgment" in *Hooks* to reflect that a deadly-weapon finding had been made, such that its entry was mandatory. If the entry of a deadly-weapon finding were in fact mandatory, the only thing that could have been done in *Hooks* would have been to vacate the judgment because judge-ordered probation was not authorized when a deadly-weapon finding is entered. The court of appeals in *Hooks* explicitly found that "specific performance of the sentence [was] not an available option" and that "[t]he only remaining remedy [was] to withdraw Hook's sentence and return the parties to their original positions." *Hooks*, 838 S.W.2d at 644.

[24] *Hooks*, 860 S.W.2d at 116 (Baird, J., dissenting).

of an affirmative finding is now discretionary."[25]

*Hooks* declined to overturn the imposition of probation despite the characterization of the Court's holding in Judge Baird's dissent and despite the existence of prior cases recognizing the duty of the trial judge and the power of an appellate court to enter a deadly-weapon finding if it has been made. The only rational explanation for this result is that the trial judge in *Hooks* had the authority to decline to make a deadly-weapon finding and that a possibility existed that he in fact declined to do so.[26]

Moreover, that result renders our treatment of the statute the same for trial judges as for juries. If a deadly-weapon special issue is submitted to a jury, the jury may answer that issue "no" even in a case in which use of a deadly weapon is a necessary element of the offense. Such a result in a jury trial would be internally inconsistent, but the law does not bar inconsistent verdicts.[27] We conclude that *Hooks* decided, by necessary implication, that a trial judge has the discretion to decline to make a deadly-weapon finding even after finding the defendant guilty of an offense in which use of a deadly weapon was a charged or necessary element.[28]

---

[25] *Id.* at 116.

[26] The fact that the trial judge placed the defendant on probation when a deadly-weapon finding would have precluded such is some indication, though not conclusive, that the trial judge had declined to make a deadly-weapon finding. *See Ex parte Lucke*, 742 S.W.2d 818, 820 (Tex. App.–Houston [1st Dist.] 1987, no pet.) ("The judgment in this case does not reflect a 'separate and specific' affirmative finding that the defendant used a deadly weapon. . . . These facts, coupled with the fact that the court accepted the application for probation and referred appellant to the probation department, evidences an intent not to find that appellant used a deadly weapon.").

[27] *See United States v. Powell*, 469 U.S. 57, 68-69 (1984); *Dunn v. United States*, 284 U.S. 390, 393 (1932).

[28] *See Garza v. State*, 435 S.W.3d 258, 261 (Tex. Crim. App. 2014) ("A careful reading of *Maxwell* indicates that a majority of this Court has already passed on this issue—if only by necessary

In the present case, the trial judge's oral pronouncement of judgment stated that appellant was guilty of the offense of "conspiracy to commit capital murder just as set forth in the indictment," but the original written judgment said "N/A" under the section titled "Findings on Deadly Weapon." The written entry in the judgment would seem to be an explicit determination that a deadly-weapon finding was *not* being made, and it is more explicit than the trial judge's oral pronouncement of guilty "as set forth in the indictment." At a hearing, the parties might be able to shed light on exactly what the trial judge did or how the "N/A" notation came to be in the judgment, and they might be able to determine when and under what circumstances the docket-sheet entry was made.

We agree with the State that if the record showed indisputably that the failure to enter a deadly-weapon finding was a clerical error—for instance, if the judge had orally pronounced that he was making a deadly-weapon finding and the judgment was silent instead of saying "N/A"—then

---

implication. . . . While on its face, *Maxwell* appeared to address a pure retroactivity question, it held by necessary implication that a claim asserting an Eighth Amendment violation under *Miller* was not subject to procedural default. The majority opinion specifically acknowledged that, on direct appeal, the court of appeals 'rejected [Maxwell's] claim that his automatic sentence violated the Eighth Amendment because he had never raised that claim in the trial court.' Nonetheless, the majority granted Maxwell habeas corpus relief by vacating his life-without-parole sentence and remanding the case for further sentencing proceedings permitting the factfinder to determine whether Maxwell's sentence should be assessed at life with or without parole."). Judge Yeary contends that the *Maxwell* case is distinguishable from *Hooks* because *Maxwell* was an original proceeding while *Hooks* was a discretionary-review proceeding. We disagree because (as explained in our footnote 23 and the associated text) the court of appeals in *Hooks* did everything that was necessary to effectuate a holding that entry of a deadly-weapon finding was required because one had been made. As we explained, because the entry of a deadly-weapon finding would have made the probation judgment in *Hooks* illegal, the court of appeals exercised the only option available upon a conclusion that a deadly-weapon finding must be entered—undoing the sentence. Consequently, if the court of appeals in *Hooks* had been correct that the trial court had necessarily made a deadly-weapon finding, then we should not have overturned its judgment. In overturning its judgment, we held by necessary implication that the court of appeals was not correct in that regard. Judge Yeary also observes that the author of the Court's opinion in the present case opposed the deriving of a holding by necessary implication from *Maxwell*. *See Garza*, 435 S.W.3d at 271-72 (Keller, P.J., dissenting). The short answer to that observation is that the author lost that battle, as her opinion was a dissent.

remanding the case to the trial court would be a useless task. But the record in this case is far from conclusive; if anything, it more readily supports the lack of an affirmative finding than the existence of one. Because the record does not conclusively establish that a deadly-weapon finding was made at or before the time the written judgment was signed, remanding this case for a hearing on the *nunc pro tunc* is not a "useless task."[29]

We reverse the judgment of the court of appeals and remand the case to the trial court for proceedings consistent with this opinion.

Delivered: September 16, 2015
Publish

---

[29] Judge Keasler is mistaken in his claim that we are impugning the trial judge's credibility. It is not the trial judge's fault that our opinions have confused the issue so much that even members of this Court cannot agree about what the law allows and what the law requires. The possibility exists that the trial judge was laboring under a mistaken impression of the law when he entered the *nunc pro tunc* order. If he adhered to Judge Keasler and Judge Yeary's views, which we have rejected today, he could have entered the *nunc pro tunc* on the basis that he was required to do so by the nature of the offense itself, regardless of whether he actually made a deadly-weapon finding at the time of judgment. In any event, the trial judge erred in failing to accord appellant a hearing before issuing an adverse *nunc pro tunc* judgment, and our correction of that error says nothing about the trial judge's credibility. And while an appellate court may need to address in a given case whether a remand for a hearing on a *nunc pro tunc* order would be a useless act, a trial court should never decline to hold a *nunc pro tunc* hearing in the first instance on that basis.