

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

No. 08-25-00114-CR

---

Geraro Mendiola, Jr., Appellant

v.

The State of Texas, Appellee

---

### On Appeal from the 227th District Court
### Bexar County, Texas
### Trial Court No. DC2024CR0876

---

## MEMORANDUM OPINION[1]

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

Appellant Geraro Mendiola, Jr.[2] appeals his conviction of two counts of aggravated assault. Finding no error, we affirm.

## I. BACKGROUND

Mendiola lived in his RV on a rented lot. An eviction judgment was granted against him on March 30, 2023. On April 6, 2023, Mendiola and his RV were still on the lot, and the Justice of the Peace issued a writ possession commanding a sheriff or constable to post a written warning that, not sooner than 24 hours after the notice, the writ would be executed and Mendiola would be removed from the property. The warning was posted on April 20, 2023.

On May 5, 2023, Constable Guadalupe Hernandez, along with two other law enforcement officers, all in uniform, arrived at the property to execute the writ and arrest Mendiola on outstanding felony warrants. Hernandez knocked on the door, announced himself as a constable, and told Mendiola that they were there to evict him. Mendiola refused to open the door. Hernandez enlisted the help of the property's maintenance worker, Mike Smith. As Hernandez and the other officers stood along the side of the RV, Smith attempted to pry the door open. Mendiola repeatedly yelled for them to stop and then fired a gun. At trial, Hernandez testified that he heard the bullet go by his head, and he ran for cover. No one was injured.

After Mendiola was apprehended, his RV was searched and photographed. There was one bullet hole through the side of the RV to the left of the door. A trajectory rod showed that the bullet travelled at a downward angle. Inside the RV, the deputies found two pistols and ammunition.

Mendiola was indicted on two counts of aggravated assault for using and exhibiting a deadly weapon, namely a firearm, while intentionally and knowingly threatening imminent bodily

---

[2] This is how Appellant is named in the indictment and underlying judgments. However, we note that various documents in the record provide the first names "Gerardo" and "Geraldo."

injury against Hernandez, a public servant, (Count 1) and Smith (Count 2). The indictment also included a deadly weapon allegation, but that allegation was abandoned by the State at the beginning of trial. Testifying at trial were Smith, Hernandez, and deputies involved in the investigation. Mendiola also testified during the guilt/innocence phase and admitted that he fired a gun but said that it was a warning shot fired into the floor of the RV. The jury found Mendiola guilty on both counts and sentenced him to 20 years for count one and 10 years for count two.

Mendiola argues that the evidence was legally insufficient to prove that he was "shooting at or in the direction of" Hernandez and Smith (issue one) and that Hernandez was lawfully discharging an official duty when Mendiola fired the gun (issue two). In his third issue, Mendiola asserts that it was error for the trial court to include in the jury charge parole eligibility instructions that are required when the jury makes a deadly weapon finding.

## II. LEGAL SUFFICIENCY OF THE EVIDENCE

### A. Applicable law and standard of review

As relevant to this case, a person commits an assault if he "intentionally or knowingly threatens another with imminent bodily injury[.]" Tex. Penal Code § 22.01(a)(2). The offense is elevated to an aggravated assault if he "uses or exhibits a deadly weapon during the commission of the assault." *Id*. § 22.02(a)(2). An aggravated assault is further elevated from a second-degree felony to a first if it is "against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty." *Id*. at § 22.02(b)(2)(B).

Evidence is legally sufficient to support a conviction if "a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Because it is "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts

to ultimate facts," "we consider all the evidence in the light most favorable to the verdict *Id.* (*quoting Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)).

**B. Variance between evidence and allegations**

Mendiola argues that the State's evidence did not prove the manner and means that it alleged in the indictment—that he shot "at and in the direction of" both complainants. Mendiola argues that instead of proving that allegation, "[a]ll physical and forensic evidence showed that the bullet traveled downward into the floor, not outward toward any person." Mendiola contends that the variance between the allegations and evidence is material, rendering the evidence legally insufficient to support the conviction.

We need not determine if the variation that Mendiola describes is a material one because we find that there is no variation to begin with. The evidence was clear that Mendiola did not shoot through the floor as he claims in his brief. Pictures of the bullet hole (circled in yellow below) were admitted into evidence and show that the bullet went through *the side* of the trailer, not the floor, exiting approximately where Hernandez and Smith had been standing when knocking and trying to pry open the door.





Although the evidence showed that the bullet travelled in a downward trajectory, the interior of the RV was higher than the ground. A person inside the RV shooting at or in the direction of someone standing outside the RV would necessarily be shooting downward. In addition, Hernandez testified that he heard the bullet go by his head. Mendiola argues that this was "physically impossible given his location twenty to thirty feet away. Again, there was controverting evidence otherwise. Hernandez's body camera video which was admitted into evidence shows Hernandez within a foot or two of the RV before he heard the gunshot and ran for cover.[3]

---

[3] Even if we agreed with Mendiola that the evidence showed that he fired his gun into the floor, we do not agree with him that that conduct "[does] not constitute a criminal offense under the statutory definition of aggravated assault." *Exhibiting* a deadly weapon, without firing it, can transform an assault into an aggravated assault. Tex. Penal Code § 22.02(a)(22).

We hold that there was no variance between the allegations and the evidence and that the evidence was legally sufficient for a rational juror to believe that Mendiola shot at or in the direction of Smith and Hernandez. Mendiola's first issue is overruled.

## C. Lawful discharge of official duties

Mendiola argues that the State did not present legally sufficient evidence that Hernandez was "lawfully discharging an official duty," a finding necessary in this case to increase the severity of the offense to a first-degree felony. Tex. Penal Code § 22.02(b)(2)(B). Mendiola contends that to prove that element, the State had to show that each of the Texas Property Code's requirements to execute a writ of possession were met.

Not only were Hernandez and the officers there to execute the writ of possession, they were also there to arrest Mendiola on two felony warrants. In his brief, Mendiola does makes no argument that Hernandez was not lawfully discharging his official duties in connection with the warrants. Nonetheless, even if we consider only Hernandez's actions related to the writ of possession, we would still hold that he was lawfully discharging his official duties.

Hernandez, a constable, was authorized to execute a writ of possession. Tex. Prop. Code § 24.0061(d)(2). "[A]s long as [an] officer was acting within his capacity as a peace officer, he was acting within the lawful discharge of his official duties." *Hall v. State*, 158 S.W.3d 470, 474–75 (Tex. Crim. App. 2005); *Guerra v. State*, 771 S.W.2d 453, 461 (Tex. Crim. App. 1988) (en banc). Even if a peace officer *incorrectly* performs his duties or has not "crossed every 't' and dotted every 'i' of every duty that relates to his public office", he is still lawfully discharging his duties in this context so long as he does not "criminally or tortiously abuse his office as a public servant." *Hall*, 158 S.W.3d at 474–75; *see also Guerra*, 771 S.W.2d at 461 (finding that "the determination of whether the officer was engaged in making a valid arrest at the time of his death

is not necessary to the resolution of whether the officer was acting within the lawful discharge of his official duties."); *Valdez v. State*, No. 04-24-00479-CR, 2025 WL 2235037, at *4 (Tex. App.—San Antonio Aug. 6, 2025, no pet.) (mem. op., not designated for publication) (holding that officer who placed an individual under emergency detention was lawfully discharging his official duty despite his failure to provide certain information to the detained person in compliance with the Health and Safety Code). Acts which would not qualify as a lawful discharge of official duties are acts of "'official oppression' or 'violations of the civil rights of a person in custody' or the use of unlawful, unjustified force." *Hall*, 158 S.W.3d at 475 (quoting Tex. Penal Code §§ 39.09, 39.04).

Mendiola maintains that the State did not prove that Hernandez was lawfully discharging his official duties because it presented no evidence that there was a final judgment of eviction,[4] that the period to appeal the eviction had expired, that the landlord requested the writ of possession, that the notice was posted on the exterior of the front door, that it was posted more than 24 hours before the attempt to execute the writ,[5] or that the posted warning was the required size. Tex. Prop. Code § 24.0061. Non-compliance[6] with these statutory requirements may be grounds to challenge a writ of possession or its execution, but they do not form the basis of an allegation that would undermine the lawfulness of Hernandez's conduct in discharging his official duties in executing a writ of possession. As the Court of Criminal Appeals hypothesized, a defendant who punched an officer or judge and was charged with assault on a public servant would not be entitled to an instruction on the lesser-included offense of misdemeanor on the grounds that the officer or judge

---

[4] The writ of possession is evidence that there was an eviction judgment because it stated that on March 30, 2023, a "judgment was granted against [Mendiola], entitling plaintiffs to possession of the premises[.]"

[5] There is also evidence that the warning was posted on April 20, 2023, more than 24 hours before Hernandez tried to execute the writ on May 5, 2023.

[6] Mendiola does not argue and presented no evidence that these requirements were *not* met; he only argues that the State was required to present evidence that they were met in order to prove that Hernandez was lawfully discharging his official duty.

failed to perform a mandatory duty (such as read him his *Miranda* rights or admonish him of the range of punishment). *Hall*, 158 S.W.3d at 474–75. Similarly, even if the writ of possession was not properly issued or executed, Mendiola cannot avoid elevation of the aggravated assault to a first-degree felony on the ground that Hernandez was not officially discharging his duties.

In conclusion, Hernandez did not "criminally or tortiously abuse his office as a public servant" and was lawfully discharging his official duties when he arrived to the property to execute warrants for Mendiola's arrest and a writ of execution. *Hall*, 158 S.W.3d at 474–75. We overrule Mendiola's second issue.

### III.  PUNISHMENT PHASE JURY CHARGE

The punishment phase jury charge included the following:

> Under the law applicable in this case, the defendant will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less. Eligibility for parole does not guarantee that parole will be granted.

This language is statutorily required when the jury has found a defendant guilty of certain offenses, including felony offenses when the judgment contains an affirmative finding that a deadly weapon was used or exhibited. Tex. Code Crim. Proc. art. 37.07 § 4(a); art. 42A.054A (c), (d). Mendiola argues that since the State abandoned the deadly weapon allegation and the jury charge did not include a deadly weapon special issue, there is no affirmative deadly weapon finding. Therefore, he reasons, the trial court erred by including the above language in the jury charge.

**A.  Applicable law and standard of review**

As Mendiola states, the State abandoned the deadly weapon paragraph at the beginning of trial and the jury was not asked to make a deadly weapon finding. However, a jury can make an

affirmative deadly weapon finding even when the charge does not include a specific deadly weapon question. As held by the Court of Criminal Appeals:

> Where the jury is the trier of fact, the trial court may not properly enter that they have made an affirmative finding concerning the defendant's use or exhibition of a deadly weapon or firearm during the commission of the offense unless:
>
> 1) the deadly weapon or firearm has been *specifically* pled *as such* (using the nomenclature "deadly weapon" ) in the indictment (Applies where the verdict reads "guilty as charged in the indictment"…);
>
> 2) where not specifically pled in "1)" above as a deadly weapon or firearm, the weapon pled is per se a deadly weapon or a firearm; or,
>
> 3) a special issue is submitted and answered affirmatively.

*Polk v. State*, 693 S.W.2d 391, 396 (Tex. Crim. App. 1985) (en banc). Consequently, when determining whether the jury made a deadly weapon finding, we look not just at whether there is an affirmative answer to a deadly weapon special issue; we also consider "the charging instrument, the jury charge, and the jury verdict to evaluate the propriety of an entry of a deadly-weapon finding in the judgment." *Duran v. State*, 492 S.W.3d 741, 746 (Tex. Crim. App. 2016).

We review a jury charge for error in a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). First, we determine whether there is error in the charge and then we determine if that error harmed the defendant. *Id.* In this case, the determination of error depends on the legal question of whether the jury made a deadly weapon finding. Only if there is error do we continue to the second step and determine the harm to the defendant. *Id*. The "degree of harm required for reversal depends on whether the error was preserved." *Id.*; Tex. Code Crim. Proc. art. 36.19. To obtain relief on appeal, the record must show egregious harm if error was not preserved and only some harm if error was preserved. *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)).

**B. Deadly weapon finding**

The application paragraph of the jury charge for Count I instructed the jury to find Mendiola guilty if it found beyond a reasonable doubt that he "did use or exhibit a deadly weapon, namely: a firearm, and Gerardo Mendiola Jr. did intentionally or knowingly threaten imminent bodily injury to Guadalupe Henandez by shooting at or in the direction of Guadalupe Hernandez with said deadly weapon . . . . " The language in the application paragraph for Count II (regarding the aggravated assault against Mike Smith) was identical.

Consequently, to find Mendiola guilty, the jury *had* to find that Mendiola used or exhibited a deadly weapon, specifically a firearm (which is a *per se* deadly weapon). Tex. Penal Code §1.07(17); *Polk*, 693 S.W.2d at 394 (stating that when the jury finds that a per se deadly weapon was used in the commission of a crime, "an affirmative finding will arise as a matter of law."); *Harrell v. State*, No. 03-18-00391-CR, 2020 WL 2786678, at *14 (Tex. App.—Austin May 28, 2020, pet. ref'd) (mem. op., not designated for publication) (stating that the finding of guilt was an affirmative deadly weapon finding because "[t]he only assaultive conduct alleged in this case involved using a firearm to inflict injury."). The indictment's separate deadly weapon allegation that the State abandoned was, as the trial court noted, "surplusage."

We hold that by finding Mendiola guilty, the jury made an affirmative deadly weapon finding. The trial court therefore correctly included the parole instruction in the punishment phase jury charge that is required when there is such a finding. We overrule Mendiola's third issue.

**C. Reformation of the judgment**

The State asks us to reform the judgment to reflect the jury's deadly weapon finding. When a jury makes an affirmative deadly weapon finding, "the trial court *shall* enter the finding in the judgment of the court." Tex. Code Crim. Proc. art. 42A.054(c) (emphasis added). The trial court

10

is also required to enter a finding in the judgment when the jury finds that the deadly weapon used was a firearm. *Id*. art. 42A.054(d). We have the authority to reform the judgment to "make the record speak the truth." *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (en banc); *McCallum v. State*, 311 S.W.3d 9, 19 (Tex. App.—San Antonio 2010, no pet.) ("A judgment may be reformed to reflect an affirmative finding that was made by a jury but not entered by the trial court."). We grant the State's request and reform the judgment to reflect the jury's deadly weapon finding.

## IV. CONCLUSION

We reform the trial court's judgment on both counts to include a finding that a deadly weapon was used and that the deadly weapon was a firearm. We affirm the judgment as reformed.

MARIA SALAS MENDOZA, Chief Justice

June 11, 2026

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

(Do Not Publish)